NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.   A-2723-11T1


L.J. ZUCCA, INC.,

     Plaintiff-Appellant/
     Cross-Respondent,

v.

ALLEN BROS. WHOLESALE
DISTRIBUTORS INC., and
PLAINFIELD TOBACCO & CANDY
CO., INC., a/k/a RESNICK
DISTRIBUTORS,

     Defendants-Respondents/
     Cross-Appellants,

and

ASSOCIATED WHOLESALERS INC.,
BEE GEE CANDY CO., INC.,
CONSOLIDATED SERVICE
DISTRIBUTORS, INC.,
CONTINENTAL TOBACCO & CANDY
INC., COOPER-BOOTH WHOLESALE
COMPANY,[1] EBY-BROWN COMPANY
L.L.C., M & J WHOLESALE, INC.,
M. BERNSTEIN & SONS,
MCLANE/MIDATLANTIC, INC.,
RAINBOW HEAVEN DISTRIBUTION,
L.L.C., S & K IMPORTS, INC.,

| APPROVED FOR PUBLICATION |
| :---: |
| January 9, 2014 |
| APPELLATE DIVISION |

---

[1] After briefs had been filed on these appeals, respondent
Cooper-Booth Wholesale Company filed a petition for bankruptcy
in federal court, and we dismissed the appeal as to Cooper-
Booth only.

STARKMAN GENERAL PRODUCTS,
SUN WHOLESALE, INC., and
VIKISHA CORP.,

    Defendants-Respondents,

and

BUCKS COUNTY CIGAR & CANDY,
GRABER BROTHERS, INC., GIBBY'S
WHOLESALE, GLIKIN BROTHERS, INC.,
HAROLD LEVINSON ASSOCIATES, INC.,
JOSEPH FRIEDMAN AND SONS OF NJ, INC.,
KLEIN CANDY CO. L.P., MANDEL TOBACCO
CO. OF NJ, INC., MIDDLESEX TOBACCO &
CONFECTIONARY CO., INC., OCEAN TOBACCO,
INC., PLANET WHOLESALE INC., and VALUE
KING WHOLESALE, INC.,

    Defendants[2].

---

Argued September 23, 2013 — Decided January 9, 2014

Before Judges Yannotti, Ashrafi and Leone.

On appeal from Superior Court of New Jersey, Law Division, Cumberland County, Docket No. L-834-07.

Daniel R. Chemers, of the District of Columbia, Maryland, and Pennsylvania bars, admitted pro hac vice, argued the cause for appellant/cross-respondent L.J. Zucca, Inc. (Saul Ewing, L.L.P., attorneys; Mr. Chemers, of counsel and on the brief; Francis X. Riley III and Sarah F. Lacey of the Maryland bar, admitted pro hac vice, of counsel and on the brief).

---

[2] The record on appeal does not show clearly whether these listed defendants were served with a notice of appeal and should be designated as respondents. Some defendants entered into settlements with plaintiff. Others may still be active parties.

A-2723-11T1

Marvin J. Brauth argued the cause for respondents/cross-appellants (Wilentz, Goldman & Spitzer, attorneys for Plainfield Tobacco & Candy Co., Inc. a/k/a Resnick Distributors, Inc.; Pepper Hamilton, L.L.P., attorneys for Allen Brothers Wholesale Distributors, Inc.; Mr. Brauth, of counsel and on the joint brief; Karin K. Sage and Michael T. Pidgeon, on the joint brief).

Julian Wilsey argued the cause for respondent Consolidated Service Distributors, Inc. (Franzblau Dratch, attorneys; Mr. Wilsey, on the brief).

Amanda J. Lavis and Robert J. Tribeck (Rhoads & Sinon, L.L.P.), of the Pennsylvania bar, admitted pro hac vice, attorneys for respondent Associated Wholesalers Inc. (Ms. Lavis and Mr. Tribeck, on the brief).

Cooper Levenson April Niedelman & Wagenheim, P.A., attorneys for respondents Bee Gee Candy Co., Inc., and Starkman General Products (Katherine M. Morris, on the brief).

Paul V. Lucas, Jr. (Greenberg, Trager & Herbst, L.L.P.) and Kalvin Kamien (Greenberg, Trager & Herbst, L.L.P.) of the New York bar, admitted pro hac vice, attorneys for respondents Continental Tobacco & Candy Inc., M. Bernstein & Sons, and Rainbow Heaven Distribution, L.L.C. (Messrs. Lucas and Kamien, on the brief).

Blank Rome, L.L.P., attorneys for respondent Cooper-Booth Wholesale Company; Chance & McCann, L.L.C., attorneys for respondent Eby-Brown Company L.L.C.; Stradley Ronon Stevens & Young, L.L.P., attorneys for respondent McLane/MidAtlantic, Inc.; Lawrence Kalikhman (Kalikhman & Rayz, L.L.C.) and Eric Rayz (Kalikhman & Rayz

L.L.C.) of the Pennsylvania bar, admitted pro hac vice, attorneys for respondent S & K Imports, Inc.; and Miller, Myerson & Corbo, attorneys for respondent Vikisha Corp. (Stephen M. Orlofsky, Sheila E. Branyan, of the Pennsylvania bar, admitted pro hac vice, Kevin P. McCann, Shanna McCann, Francis X. Manning, Mr. Rayz, and Gerald D. Miller, on the joint brief).

Choi & Park, L.L.C., attorneys for respondent M & J. Wholesale, Inc. (Chull S. Park, on the brief).

David A. Avedissian, attorney for respondent Sun Wholesale, Inc.

The opinion of the court was delivered by

ASHRAFI, J.A.D.

Plaintiff L.J. Zucca, Inc., a wholesaler of cigarettes and other products, filed this action in 2005 against twenty-eight other wholesalers alleging violations of New Jersey's Unfair Cigarette Sales Act of 1952 ("the UCSA" or "the Act"), N.J.S.A. 56:7-18 to -38. Plaintiff now appeals from orders of the Law Division entered in November and December 2011 that denied its motion for partial summary judgment against one of the defendants and instead granted summary judgment to all defendants, thus dismissing plaintiff's complaint in its entirety. Plaintiff also appeals from earlier orders dated February 3 and 23, 2009, that dismissed its claims against two of the defendants pursuant to the entire controversy doctrine, Rule 4:30A.

Two defendants, Allen Bros. Wholesale Distributors Inc. ("Allen Bros.") and Plainfield Tobacco & Candy Co., Inc., a/k/a Resnick Distributors ("Resnick"), cross-appeal from December 17, 2010 orders that denied their motions for summary judgment on the ground that plaintiff lacks standing to bring a private enforcement action under the UCSA.

We affirm on the standing issue and on the denial of partial summary judgment to plaintiff as to liability of one of the defendants. We reverse the orders dismissing plaintiff's amended complaint and remand to the Law Division for further proceedings consistent with this opinion.

## I.

Plaintiff claims defendants violated the UCSA by engaging in underpricing of cigarettes on the wholesale market. After six years of pleadings, discovery, and motion practice, defendants prevailed on their motions for summary judgment. We view the relevant facts most favorably to plaintiff as the party against whom summary judgment was entered. See R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

The wholesale cigarette market in New Jersey is very competitive. The State imposes few administrative barriers on new entrants to the market, and the expenses of initial entry

are not formidable. There are about one hundred or more wholesalers and subjobbers[3] in the State. No person or entity controls a majority of the market. In fact, defendant Resnick, which is one of the larger wholesalers, held only about seven percent of the Statewide market at the time relevant to this litigation.

The Director of the New Jersey Division of Taxation ("the Director") periodically issues a pricing schedule for all cigarette brands. The schedule sets minimum base prices under the UCSA that wholesalers must presumptively charge their retailer accounts. The prices are calculated in accordance with a provision of the Act, N.J.S.A. 56:7-22, and a formula set forth in an implementing regulation, N.J.A.C. 18:6-3.1(b). The formula determines the base price for each brand of cigarette by adding "the basic cost of cigarettes and the total face value of any tax stamps required by the New Jersey Cigarette Tax Act [N.J.S.A. 54:40A-1 to -43] and any municipal ordinance, [and] the presumed cost of doing business by the wholesalers . . . as

_____

[3] As we understand it, subjobbers buy cigarettes from licensed wholesalers and resell them to retailers, generally those with a lower volume of cigarette sales. See Eby-Brown Co. v. Wis. Dep't of Agric., 213 F. Supp. 2d 993, 997 (W.D. Wis. 2001), aff'd, 295 F.3d 749 (7th Cir. 2002). New Jersey imposes even fewer administrative barriers on subjobbers than on stamping wholesalers. Stamping indicates payment of cigarette taxes.

defined in [N.J.A.C. 18:6-1.1] (Definitions) of this Chapter."

N.J.A.C. 18:6-3.1(b).

Generally, N.J.S.A. 56:7-19 and N.J.A.C. 18:6-1.1, define "[b]asic cost of cigarettes" as the manufacturer's "invoice cost of cigarettes to the . . . wholesaler," with certain potential adjustments, including cigarette taxes if not already added to the invoice cost. The "cost of doing business" for a wholesaler is presumed by N.J.S.A. 56:7-22(b) and N.J.A.C. 18:6-1.1 to be 5.25% of the "'basic cost of cigarettes' to the wholesaler" plus a presumed 0.75% for cartage costs if paid by the wholesaler.[4]

In other words, the Director's price schedule begins with the invoice price the wholesaler pays manufacturers for

---

[4] N.J.S.A. 56:7-22(b) states:

> [T]he "cost of doing business by the wholesaler" shall be presumed to be 5.25% of the "basic cost of cigarettes" to the wholesaler, plus cartage to the retail outlet, if performed or paid for by the wholesaler, which cartage cost, in the absence of the filing with the director of satisfactory proof of a lesser or higher cost, shall be deemed to be 3/4 of 1% of the "basic cost of cigarettes" to the wholesaler.

N.J.A.C. 18:6-1.1, lists the types of expenses that shall be considered in determining a wholesaler's cost of doing business but also states that the cost will be presumed to be the percentages as quoted above in the statute, "[i]n the absence of the filing with the Director of satisfactory proof of a lesser or higher cost of doing business."

cigarettes, adds cigarette taxes, allows for certain adjustments, and finally adds a presumptive percentage as the "cost of doing business" or overhead costs. Using this formula, the price schedule sets the minimum wholesale price for each brand.

Plaintiff's amended complaint did not allege that defendants overtly charged retailers prices below the Director's price schedule. Rather, it alleged that defendants have for years given cash rebates and other credits to their retailer accounts, and that these concessions effectively drop the wholesalers' true prices below those shown on their invoices and below the prices fixed by the Director. No defendant had obtained the Director's approval to charge retailers prices lower than the Director's schedule, or to give rebates, credits, or other concessions.

After several years of document and deposition discovery, plaintiff attempted to establish the legal parameters of its private enforcement case with a "test" motion for partial summary judgment on the liability of one defendant. Plaintiff used information it had developed in discovery to show that defendant Resnick's effective prices were below those in the price schedule. Resnick's president had admitted in deposition that rebates and credits it had granted to its retailer accounts resulted in its actual prices being lower than those approved by

8

the Director.  Resnick claimed it was compelled to provide such concessions, as did many other wholesalers and subjobbers, in order to stay competitive in the cigarette market.

Resnick denied that the effective prices it charged its retailer accounts were below its own costs, and plaintiff produced no evidence to the contrary.  In fact, neither side produced evidence of the actual overhead costs of cigarette sales incurred by Resnick or any of the defendants.  Discovery was not complete at the time of the summary judgment motions, and actual costs to defendants were not addressed in the summary judgment record.  No expert reports were produced regarding the economics of any party's business activities.

Plaintiff conceded it could not prove Resnick or any other defendant had the ability to recoup the losses it allegedly suffered when it underpriced its cigarettes, or even that Resnick or any other defendant in fact suffered losses as a result of the underpricing.  Plaintiff's executive vice-president testified in deposition that some out-of-state wholesalers had lower labor and overhead costs than New Jersey wholesalers and, consequently, were able to sell cigarettes at lower prices than those set by the Director.  This testimony contradicted plaintiff's claim that defendants sold cigarettes at a loss.  Nevertheless, plaintiff maintained it was entitled

to partial summary judgment against Resnick because, as a matter of law, Resnick's admitted rebates and credits violated the Act.

Defendants, on the other hand, contended that plaintiff could not prove defendants had the ability to recoup alleged underpricing losses in the highly competitive cigarette market and, therefore, that they had the anticompetitive intent required to prove a violation of the UCSA. Because intent to injure competitors or to destroy or lessen competition is an element of a UCSA violation, and because antitrust law views the ability to recoup losses as vital to proving such a violation, defendants claimed they were entitled to summary judgment.

The trial court agreed with defendants. It concluded that "predatory intent" in conformity with antitrust law must be proven to show a violation of the UCSA. Because plaintiff concededly could not prove predatory intent, all defendants were entitled to summary judgment.

## II.

Urging affirmance of the trial court's decision, defendants argue that the UCSA requires a private party such as plaintiff to prove the following three elements in an enforcement action: (1) that plaintiff has standing to seek relief under the Act, specifically, that plaintiff was "injured" by the violations of the Act it alleges; (2) that a defendant has priced its

cigarettes below its own costs for those products, not just below the Director's price schedule; and (3) that the defendant had "predatory intent" in pricing its cigarettes below its costs, or in granting rebates or other concessions to retailers.

As to the last of the three elements, defendants argue the concept of predatory intent under the UCSA conforms to antitrust law and means "a dangerous probability" or at least "a reasonable prospect" that the defendant will recoup its losses through later monopolistic high pricing of the cigarettes ("supracompetitive pricing"). See Brooke Group Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 224, 113 S. Ct. 2578, 2588, 125 L. Ed. 2d 168, 187 (1993); see also Cargill, Inc. v. Monfort of Colorado, Inc., 479 U.S. 104, 117, 107 S. Ct. 484, 493, 93 L. Ed. 2d 427, 440 (1986) ("Predatory pricing may be defined as pricing below an appropriate measure of cost for the purpose of eliminating competitors in the short run and reducing competition in the long run."). Defendants focus most prominently on the fact that the wholesale cigarette market in New Jersey is not at risk of any person or entity gaining a monopoly and injuring competitors by future supracompetitive pricing, but overall, they also contend that plaintiff cannot prove any of the three necessary elements of its cause of action.

Plaintiff, on the other hand, contends that the UCSA is not antitrust legislation requiring a showing of predatory intent. It contends the UCSA is legislation fixing floor prices for cigarettes as a means of fostering fair competition. Plaintiff argues that a private enforcement action requires only proof that a defendant sold cigarettes at effective prices below those authorized by the Director, or that a defendant granted rebates or other concessions to its retailer accounts without the Director's prior approval. According to plaintiff, the Director, rather than each individual wholesaler, determines the minimum prices that wholesalers must charge, and defendants are bound by the Director's price schedule unless they have received prior approval to charge lower prices, which no defendant has obtained. Plaintiff contends that the statutory requirement that a defendant have intended to injure competitors or to destroy or lessen competition is presumed upon proof of violations of the Director's price schedule or upon proof of a defendant engaging in the other prohibited acts.

The dispute involves an issue of statutory interpretation. Therefore, our standard of review is plenary. See McGovern v. Rutgers, the State Univ. of N.J., 211 N.J. 94, 107-08 (2012); Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

A-2723-11T1

We commend all counsel for excellent briefing of the disputed legal issues, but we adopt in its entirety neither side's interpretation of the Act.

A.

We first address the issue of plaintiff's standing to bring an enforcement action pursuant to the UCSA. Whether a party has standing is a threshold inquiry. Spinnaker Condo. Corp. v. Zoning Bd. of Sea Isle City, 357 N.J. Super. 105, 110 (App. Div.), certif. denied, 176 N.J. 280 (2003). If defendants Allen Bros. and Resnick are correct in their cross-appeal that plaintiff lacks standing, the other issues are moot, and plaintiff's amended complaint should be dismissed against all defendants.

As a question of law, the issue of standing is subject to plenary review on appeal. In re Project Authorization Under N.J. Register of Historic Places Act, 408 N.J. Super. 540, 555 (App. Div. 2009), certif. denied, 201 N.J. 154 (2010).

The UCSA authorizes an enforcement action "to prevent, restrain or enjoin a violation, or threatened violation, of any of the provisions of this act." N.J.S.A. 56:7-32(a). Standing to seek such injunctive relief is conferred as follows:

> Such an action may be instituted by any person _injured_ by any violation or threatened violation of this act or by the Attorney-General, upon the request of the

> director. . . . In such action it shall not
> be necessary that actual damages to the
> plaintiff be alleged or proved . . . .

> [Ibid. (emphasis added).]

Additionally, subsection b of the same statute permits a private action for money damages.

Thus, a private party may sue for money damages, or it may seek only injunctive relief even if it suffered no actual damages, provided it was "injured by any violation or threatened violation" of the Act. Here, plaintiff sought both money damages and injunctive relief, alleging that defendants' rebate and pricing practices caused it to lose or become unable to compete for business from defendants' retailer accounts, resulting in a loss of market share and profits.

Allen Bros. and Resnick argue that plaintiff cannot prove the requisite injury. They assert plaintiff has presented no competent proof that it actually lost a single retailer account as a consequence of defendants' business practices. They contend that the UCSA should be interpreted similarly to the private enforcement provision of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -195, relying in particular on the Supreme Court's restriction of that act's enforcement provision in Weinberg v. Sprint Corp., 173 N.J. 233 (2002).

The Consumer Fraud Act, however, restricts standing of a private claimant to "any person who suffers an[] ascertainable loss of moneys or property" from the unlawful conduct prohibited by that law. N.J.S.A. 56:8-19 (emphasis added). It permits only the Attorney General to maintain an action solely for injunctive relief. Weinberg, supra, 173 N.J. at 250. The UCSA is not the same. A private party may maintain an action for injunctive relief without proof that it suffered a monetary loss. N.J.S.A. 56:7-32(a).

The trial court rejected defendants' arguments on standing because plaintiff had alleged actual damages, and it could not be expected to substantiate its damages before discovery was completed. The trial court also relied on the specific language of the UCSA we have quoted and concluded that plaintiff had alleged sufficient injury to pursue its claims regardless of whether it had sustained any actual damages.

Our courts have adopted a liberal approach to standing. Crescent Park Tenants Ass'n v. Realty Equities Corp., 58 N.J. 98, 101 (1971). Standing requires "a sufficient stake and real adverseness with respect to the subject matter of the litigation" and a "substantial likelihood of some harm visited upon the plaintiff in the event of an unfavorable decision." In re Adoption of Baby T., 160 N.J. 332, 340 (1999).

The UCSA creates a factual presumption of intent to injure competitors by the underpricing of cigarettes, or by granting rebates or other concessions. See N.J.S.A. 56:7-20(d). Injury, which is distinct from actual proven monetary damages, can occur because the aggrieved wholesaler is compelled to compete for sales with a competitor that underprices its cigarettes.

We conclude, as did the trial court, that plaintiff demonstrated presumptively such an injury and therefore had standing to bring an enforcement action for injunctive relief, even if it could not prove actual monetary losses.

B.

With respect to proof of defendants' underpricing of their cigarette products, plaintiff cites N.J.S.A. 56:7-22(b) and N.J.A.C. 18:6-1.1 (quoted or summarized in footnote 4 of this opinion) in support of its contention that only the Director may approve wholesale prices below those set by the pricing schedule. Defendants dispute that position and contend that plaintiff must prove the prices a defendant charged were not only below those set by the Director's pricing schedule but also below the defendant's own costs for the cigarette products.

The UCSA provides:

> It shall be unlawful and a violation of
> this act:

a. For any . . . wholesaler . . . with intent to injure competitors or destroy or substantially lessen competition--

(1) to advertise, offer to sell, or sell, at . . . wholesale, cigarettes at less than cost to such . . . wholesaler, as the case may be,

(2) to offer a rebate in price, to give a rebate in price, to offer a concession of any kind, or to give a concession of any kind or nature whatsoever in connection with the sale of cigarettes . . . .

[N.J.S.A. 56:7-20(a).]

The statute prohibits sales below a wholesaler's own costs under subsection (1), or rebates or similar price concessions under subsection (2), both with the intent to injure competitors or to destroy or substantially lessen competition. Ibid. Plaintiff's argument that the statute is violated when a defendant sells below the Director's floor prices, regardless of the wholesaler's actual costs, is contradicted by the text of the statute. The statute specifies that an offending sale is one that is made at "less than cost to such . . . wholesaler." N.J.S.A. 56:7-20(a)(1) (emphasis added). The UCSA separately defines the term "cost to the wholesaler," N.J.S.A. 56:7-22(a), according to which definition the Director calculates the price schedule. But the violation provision refers to the cost to "such" wholesaler. See also N.J.S.A. 56:7-20(d) (sale of cigarettes by wholesaler "at less than cost to him" (emphasis

added) establishes a prima facie case of intent under the statute to injure competitors or to harm competition).

Nor do the implementing regulations suggest a different interpretation. Compare N.J.A.C. 18:6-2.1(a)(1) (prohibiting wholesaler from selling at "less than cost") with N.J.A.C. 18:6-2.2(a)(3) (prohibiting retailer from requesting a price "less than 'cost to wholesaler'" as specially defined in regulations). We conclude that N.J.S.A. 56:7-20(a)(1) prohibits sales in the wholesale market only to the extent that they fall below actual costs of the individual wholesaler.

The Act creates a presumption of the individual wholesaler's overhead costs, which is reflected in the Director's price schedule by the use of a statutory and regulatory formula, N.J.S.A. 56:7-22(b); N.J.A.C. 18:6-3.1(b). But the use of a presumption as a legal device means that the Director's price schedule is not irrefutable proof that a wholesaler charged prices below its own actual costs. A wholesaler may present evidence either to the Director or to "a court," N.J.S.A. 56:7-28(a), that its actual costs are less than that set presumptively by the price schedule. Such evidence of lower actual costs may include "a cost survey, pursuant to recognized statistical and cost accounting practices." N.J.S.A. 56:7-30. Under the Act, a wholesaler may prove it actually has a lower

cost of doing business than the presumptive costs reflected in the Director's schedule.

The regulations also prohibit the sale of cigarettes at prices below those in the Director's schedule, but only "in the absence of proof of a lesser or higher cost of doing business." N.J.A.C. 18:6-3.1(a). While subsection (d) of the same regulation states: "The sale of cigarettes by any wholesaler . . . below the price specified on such minimum price list is deemed prima facie evidence of a violation of the [UCSA]," subsection (a) permits a defense based on the wholesaler's actual cost of doing business.

Therefore, contrary to plaintiff's position on appeal, we hold it is not sufficient for plaintiff to prove that a defendant sold cigarettes at effective prices below those set by the Director's schedule. To prove a violation of N.J.S.A. 56:7-20(a)(1), plaintiff must prove that a defendant sold cigarettes at prices below its own costs for the cigarettes. Plaintiff may rely on the statutory and regulatory presumptions, but defendants have the opportunity to rebut plaintiff's prima facie case by producing evidence of their actual costs.

Here, neither side presented evidence of the actual costs to each defendant of the cigarettes it sold, but discovery was not completed. Neither side was entitled to summary judgment

regarding the issue of whether defendants' products were underpriced under N.J.S.A. 56:7-20(a)(1).

Plaintiff's prima facie underpricing case in accordance with the Act allowed it to withstand summary judgment as to the pricing element of an enforcement case. Furthermore, plaintiff's evidence that defendants offered rebates and concessions constituted a prima facie case of violation of the Act. Defendants then had the burden of producing evidence that their actual costs were less than those set by the statutory and regulatory formulae, or to produce evidence that their pricing practices, and their rebates and credits, lacked the requisite intent to injure competitors or to destroy or lessen competition.

In response to plaintiff's motion for summary judgment, Resnick relied in part on testimony that it provided rebates and concessions to stay competitive with other wholesalers and subjobbers who were doing the same. A genuine issue of fact existed as to whether Resnick had the requisite anticompetitive intent to be found in violation of the Act.

If defendants produce evidence of their actual costs that are lower than those presumed by the Act, the ultimate burden of persuasion on a violation of N.J.S.A. 56:7-20(a)(1) lies with plaintiff to prove the prices defendants charged were in fact

below their actual costs. Moreover, plaintiff must bear the ultimate burden of persuasion on defendants' intent, under either subsection (1) or (2) of the statute, to injure competitors or to destroy or substantially lessen competition.

C.

The primary issue on appeal is what proofs the intent element of the Act requires. Plaintiff contends that the Act and implementing regulations set floor prices for the cigarette wholesale market, and that a violation can be shown based on the statutory provision in N.J.S.A. 56:7-20(d) that underpricing, or rebates or concessions, constitute prima facie proof of the anticompetitive intent required by the Act. The trial court disagreed and concluded that plaintiff must prove "predatory intent," as that concept is understood in federal and state antitrust law. See, e.g., Brooke Group, supra, 509 U.S. at 221-25, 113 S. Ct. at 2587-89, 125 L. Ed. 2d at 185-87; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 584, 106 S. Ct. 1348, 1354-55, 89 L. Ed. 2d 538, 550-51 (1986); Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc., 282 N.J. Super. 140, 197-98 (App. Div.), certif. denied, 141 N.J. 99 (1995).

In particular, the court concluded that plaintiff must prove defendants intended and could reasonably expect to recoup the losses they incurred in the underpricing of their cigarettes

21

by raising their prices above competitive levels once they eliminated or impaired their competition.[5] See Matsushita, supra, 475 U.S. at 589-91, 106 S. Ct. at 1357-58, 89 L. Ed. 2d at 554-55. Plaintiff conceded that it could offer no evidence to prove such predatory intent. Consequently, the court granted summary judgment to defendants and dismissed plaintiff's claims.

On appeal, plaintiff contends the Act is not antitrust legislation but a law that sets minimum prices for cigarettes to protect both competition and competitors in the market. Plaintiff argues that the UCSA's intent provision does not

---

[5] In Brooke Group, supra, 509 U.S. at 224, 113 S. Ct. at 2588, 125 L. Ed. 2d at 187, the United States Supreme Court explained the concept of predatory intent in antitrust cases:

> The second prerequisite to holding a competitor liable under the antitrust laws for charging low prices is a demonstration that the competitor had a reasonable prospect, or, under § 2 of the Sherman Act, a dangerous probability, of recouping its investment in below-cost prices. For the investment to be rational, the [predator] must have a reasonable expectation of recovering, in the form of later monopoly profits, more than the losses suffered. Recoupment is the ultimate object of an unlawful predatory pricing scheme; it is the means by which a predator profits from predation. Without it, predatory pricing produces lower aggregate prices in the market, and consumer welfare is enhanced.
>
> [[Citations and internal quotation marks omitted. Alteration in original.)].

require proof of predatory intent but only intent to sell cigarettes below minimum prices fixed by the Director.

In response, defendants contend that the history of the Act, and the interpretation of similar statutes in other jurisdictions, lead to the conclusion that the UCSA is an antitrust law that requires proof of predatory intent as described. Here, argue defendants, the undisputed evidence is that the wholesale cigarette market in New Jersey is very competitive, easy to enter, and not concentrated, no wholesaler having a large share of the market. Therefore, plaintiff cannot show that any wholesaler will gain a monopoly in the market by which it would recoup its losses.

As we have stated, our conclusions disagree with both sides' interpretations of the Act. Regarding the intent element of a violation, plaintiff's interpretation again cannot be squared with the plain text of the statute, which explicitly requires proof of an "intent to injure competitors or destroy or substantially lessen competition," N.J.S.A. 56:7-20(a), that is, proof of anticompetitive intent. At the same time, such intent does not necessarily equate to the precise meaning of predatory intent discussed in federal antitrust law.

The UCSA creates a presumption that sales below the wholesaler's costs, or facilitated with rebates or concessions,

23                                          A-2723-11T1

are intended to injure competitors or to lessen competition, and therefore, are a violation of the Act. N.J.S.A. 56:7-20(d) provides in relevant part:

> Evidence of advertisement, offering to sell or sale of cigarettes by any . . . wholesaler . . . at less than cost to him, or evidence of any offer of a rebate in price or the giving of a rebate in price or an offer of a concession or the giving of a concession of any kind or nature whatsoever in connection with the sale of cigarettes . . . shall be prima facie evidence of intent to injure competitors and to destroy or substantially lessen competition.
>
> [(Emphasis added).]

The implementing regulations further specify that sales at prices below those in the Director's schedule are "deemed prima facie evidence of a violation" of the statute. N.J.A.C. 18:6-3.1(d) (emphasis added). But if, as plaintiff insists, such sales in themselves constitute adequate proof of violations, the reference to "prima facie evidence" would be superfluous. A prima facie case is not an irrefutable case. A wholesaler that sells below the Director's price schedule or below its own costs can rebut a charge of violating the Act by presenting evidence that it did not have the intent to destroy, lessen, or injure competition. Indeed, a statutory provision permits the wholesaler to show it was compelled to sell below costs, or to

24

offer rebates or concessions, in order to compete in the market with other wholesalers' prices.  N.J.S.A. 56:7-26.

Plaintiff's view of the Act is further contradicted by our State Supreme Court's remarks in Lane Distributors, Inc. v. Tilton, 7 N.J. 349, 366 (1951), where the Court held unconstitutional on grounds that do not affect this appeal the UCSA as originally enacted.  The Court stated in Lane: "The primary purpose of the Unfair Cigarette Sales Act is to prohibit the sale of cigarettes by a wholesaler or retailer by unfair practices below cost; it is not a price fixing statute . . . ." Id. at 363 (emphasis added).

Analogous below-cost statutes in other jurisdictions nearly uniformly require proof of anticompetitive intent or effect. See Simonetti, Inc. v. State, 132 So. 2d 252, 262-63 (Ala. 1961); McLane Co. v. Weiss, 965 S.W.2d 109, 110 (Ark. 1998); Twin City Candy & Tobacco Co. v. A. Weisman Co., 149 N.W.2d 698, 703-05 (Minn. 1967).  But see May's Drug Stores, Inc. v. State Tax Comm'n, 45 N.W.2d 245, 251-52 (Iowa 1950) (no anti-competitive intent required).  Proof of underpricing is not sufficient to prove a violation of the Act, unless the defendant presents nothing to rebut the prima facie case of anti-competitive intent.

A-2723-11T1

We also reject, however, defendants' interpretation of the statute. Defendants contend plaintiff must prove affirmatively a predatory intent in underpricing of defendants' cigarette products. They argue that plaintiff must prove, in conformity with federal antitrust law, a dangerous probability or a reasonable prospect that defendants can recoup their losses by future supracompetitive prices.

In support of this interpretation, defendants argue that the Director views the intent element as they do. In re-adopting the implementing regulations, the Division of Taxation commented that one danger of the practices forbidden by the Act was "large dealers [driving] out small competitors by selling below cost," and thereby "establish[ing] a monopoly, and rais[ing] prices exorbitantly." Proposed Readoption: N.J.A.C. 18:6, 16 N.J.R. 228, 229 (Feb. 6, 1984). Defendants extrapolate from these comments and from the case law of other jurisdictions that the New Jersey UCSA should be read as an antitrust law designed to prevent monopolization of the industry.

The Court in Lane noted that many state below-cost statutes were inspired by federal antitrust legislation. Lane, supra, 7 N.J. at 364. Most of these statutes, including our own, were enacted at about the same time as the Robinson-Patman Act, by which Congress amended federal antitrust laws to prohibit

26                                                          A-2723-11T1

pricing discrimination "where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition." 15 U.S.C.A. § 13(a); see also Baseline Liquors v. Circle K Corp., 630 P.2d 38, 40 (Ariz. Ct. App.) (unfair sales acts of several states were adopted in the wake of the Robinson-Patman Act), cert. denied sub nom. Skaggs Drug Ctrs., Inc. v. Baseline Liquors, 454 U.S. 969, 102 S. Ct. 515, 70 L. Ed. 2d 387 (1981).

Proof of a violation of the Robinson-Patman Act, 15 U.S.C.A. § 13(a), requires proof of at least a "reasonable prospect" of recoupment through monopoly pricing, and proof of a violation under the Sherman Antitrust Act, 15 U.S.C.A. § 2, requires proof of "a dangerous probability, of recouping [losses] in below-cost prices." Brooke Group, supra, 509 U.S. at 224, 113 S. Ct. at 2588, 125 L. Ed. 2d at 187. Defendants argue that the same reasonable prospect or dangerous probability of recoupment must be proven by plaintiff in this case.

Most other jurisdictions that have interpreted their below-cost statutes did so before the Brooke Group decision. Only one state court has explicitly mentioned recoupment as a component of the intent element, and then, only in passing. See McLane Co., supra, 965 S.W.2d at 113-14. The state cases do not go so

far as defendants argue in requiring that proof of anti-competitive intent match antitrust laws.

Legal authority in our own jurisdiction is sparse bearing on interpretation and application of the UCSA. The Law Division has observed that the Act's purpose was to "prohibit the sale of cigarettes at less than cost because the use of cigarettes as a 'loss-leader'[6] is an unfair and deceptive practice." Coast Cigarettes Sales, Inc. v. Mayor and City Council of Long Branch, 121 N.J. Super. 439, 447 (Law Div. 1972). Likewise, in Lane, supra, 7 N.J. at 363-64, our Supreme Court mentioned the loss-leader practice as a target of the UCSA.

Proof of loss-leader sales, however, is not generally helpful in demonstrating the kind of monopolistic behavior addressed by federal antitrust statutes. See, e.g., Hiland Dairy, Inc. v. Kroger Co., 402 F.2d 968, 973-75 (8th Cir. 1968) (sales of dairy products as loss-leaders gave no rise to dangerous probability of monopoly in a highly-competitive dairy market), cert. denied, 395 U.S. 961, 89 S. Ct. 2096, 23 L. Ed. 2d 748 (1969). At least one federal court has noted that such sales "are distinguished from predatory pricing," where the

_____

[6] "Loss-leader" refers to "[t]he selling of selected goods at a loss in order to lure customers into the store." Safeway Stores, Inc. v. Oklahoma Retail Grocers Asso., 360 U.S. 334, 340, 79 S. Ct. 1196, 1201, 3 L. Ed. 2d 1280, 1285 (1959).

"vendor's hope is to drive other competitors from the market and use its consequent market power to recoup losses on underpriced goods through supracompetitive prices" on those goods. Parish Oil Co. v. Dillon Cos., 523 F.3d 1244, 1254 n.5 (10th Cir. 2008); see also Wal-Mart Stores v. Am. Drugs, 891 S.W.2d 30, 34 (Ark. 1995) (Loss-leader strategy "is markedly different from a sustained effort to destroy competition in one article by selling below cost over a prolonged period of time.").

As the United States Supreme Court has stated, however, "federal antitrust laws . . . do not create a federal law of unfair competition or 'purport to afford remedies for all torts committed by or against persons engaged in interstate commerce.'" Brooke Group, supra, 509 U.S. at 225, 113 S. Ct. at 2589, 125 L. Ed. 2d at 187 (quoting Hunt v. Crumboch, 325 U.S. 821, 826, 65 S. Ct. 1545, 1548, 89 L. Ed. 1954, 1957 (1945)).

A wholesaler in New Jersey might attempt to weaken competitors by selling cigarettes at a loss, and to reap profits through the sale of other products to the same retailer accounts. If the wholesaler has not transgressed federal or state antitrust laws because it has no ability to recoup its cigarette losses by means of future supracompetitive prices on cigarettes, it nonetheless may have intentionally injured competitors and harmed competition in a manner contemplated by

the UCSA. As one federal court stated with respect to a similar statute of another state, the statutory price restrictions are meant to enhance the likelihood that "a cigarette wholesaler that wishes to increase its market share must do so by providing higher quality service to its customers rather than by selling below the Act's definition of cost." Eby-Brown Co. v. Wis. Dep't of Agric., 213 F. Supp. 2d 993, 998 (W.D. Wis. 2001), aff'd, 295 F.3d 749 (7th Cir. 2002). Whatever the precise parameters of the anticompetitive intent element in our UCSA, they must be broad enough to permit regulation of loss-leader and other anticompetitive strategies.

In that connection, plaintiff alleged in its complaint that it "has suffered and continues to suffer substantial damages in the form of lost sales of cigarettes, as well as related goods including other tobacco products, candy, groceries, health and beauty aids, and toiletries; and lost market share." (Emphasis added.) That claim is cognizable under the UCSA.

We have already noted that the UCSA explicitly provides that below-cost pricing and the granting of rebates or concessions constitute prima facie evidence of anticompetitive intent. N.J.S.A. 56:7-20(d). In McLane Co., supra, 965 S.W.2d at 113-14, the Arkansas court upheld against constitutional challenge that state's statutory provision that evidence of

30                                                                      A-2723-11T1

below-cost pricing sufficed to raise a factual presumption of the requisite intent. Other courts, without mention of recoupment, have nearly uniformly upheld similar provisions. People v. Pay Less Drug Store, 153 P.2d 9, 13 (Cal. 1944); Dikeou v. Food Distributors Ass'n, 108 P.2d 529, 531-33 (Colo. 1941); Davey Bros., Inc. v. Stop & Shop, Inc., 217 N.E.2d 751, 753 (Mass. 1966); Rocky Mountain Wholesale Co. v. Ponca Wholesale Mercantile Co., 360 P.2d 643, 647 (N.M.), appeal dismissed, 368 U.S. 31, 82 S. Ct. 145, 7 L. Ed. 2d 90 (1961); see also Twin City Candy, supra, 149 N.W.2d at 702, 705-06 (striking down Minnesota's cigarette below-cost statute, but suggesting that creating a presumption of intent could facilitate proof of a violation consistent with constitutional safeguards). Contra Mott's Super Mkts., Inc. v. Frassinelli, 172 A.2d 381, 384-86 (Conn. 1961) (statutory presumption of intent not sufficient to comply with due process requirements in proving the defendant's violation).

Under our UCSA, prima facie proof of anticompetitive intent arising from rebates and concessions permitted plaintiff to withstand defendants' motions for summary judgment when no contrary evidence was presented. Once defendants have introduced sufficient evidence to rebut plaintiff's prima facie case, plaintiff must discredit defendants' evidence or produce

additional evidence of anticompetitive intent so that a rational factfinder could conclude that defendants had the intent to injure competitors or to destroy or lessen competition. The intent element in the UCSA is not limited to the narrow meaning of predatory intent in federal antitrust law.

Despite six years of discovery and litigation, neither side presented affirmative evidence of intent in the summary judgment record. Plaintiff relied on its interpretation of the Act, which we have rejected in part, and defendants relied on the highly competitive condition of the New Jersey wholesale market to refute predatory intent, which we also reject as insufficient by itself to rebut plaintiff's prima facie case. As the matter stands before us, neither side was entitled to summary judgment on the grounds upon which they relied.

The trial court's grant of summary judgment to defendants will be reversed and the matter remanded for further proceedings at which either side may present evidence of defendants' intent, as well as defendants' actual costs as discussed previously.[7]

---

[7] In this civil case, we are not addressing N.J.S.A. 56:7-20(c), which provides that a violation of the Act is a disorderly person offense as to which a fine of up to $1,000 may be imposed. We make no determination that a defendant would have any burden of proof in defending against a disorderly persons charge. See Twin City Candy, supra, 149 N.W.2d at 705-06.

Plaintiff also appeals from the trial court's dismissal of its claims against defendants M. Bernstein & Sons ("Bernstein") and Consolidated Service Distributors ("Consolidated") on grounds that those claims were precluded by the entire controversy doctrine.

The doctrine requires each party to an action to assert all claims arising from the controversy at issue — that is, all claims arising from the same "core set of related facts" — or be estopped from raising them thereafter. Thomas v. Hargest, 363 N.J. Super. 589, 595 (App. Div. 2003). The doctrine is meant to foster "efficient judicial administration and fairness to litigants." Woodward-Clyde Consultants v. Chem. & Pollution Sciences, Inc., 105 N.J. 464, 472 (1987). Its nature is equitable and its application subject to the trial court's broad discretion on evaluation of the particular circumstances of each case. Oliver v. Ambrose, 152 N.J. 383, 395 (1998). Application of the doctrine is warranted only where the party against whom it is asserted "had a fair and reasonable opportunity" to litigate the claim in the earlier action. Thomas, supra, 363 N.J. Super. at 596.

Bernstein, Consolidated, plaintiff, and a number of other defendants in this litigation were parties in an earlier action

filed in 1996, <u>The Southland Corp. v. Plainfield Tobacco & Candy Co.</u> ("<u>Southland</u> litigation"), Monmouth County Docket No. L-1291-96. The plaintiff in that litigation, Southland Corporation, was a franchisor of 7-Eleven stores that received a percentage of the profits of its franchisees, including profits from the sale of cigarettes. It alleged that the defendants in that litigation had participated in a fraudulent scheme of providing unlawful cash rebates to the 7-Eleven franchisees, thereby depriving the plaintiff of its full share of profits.

In 2001, the court in the <u>Southland</u> litigation decided a series of motions addressing whether the alleged rebates violated the UCSA. In its written decision, the court determined that proof of predatory intent is necessary to establish a violation of the Act, but it also concluded that dismissal of the plaintiff's claims on that basis was unwarranted at that stage of the litigation.[8]

Plaintiff L.J. Zucca filed cross-claims in the <u>Southland</u> litigation, but its cross-claims did not allege that Bernstein or Consolidated, or any other defendant, violated the UCSA. Plaintiff's complaint in this action alleged violations by

---

[8] Both sides on this appeal address the <u>Southland</u> trial court's written opinion in the context of the predatory intent issue. Because that opinion was unpublished, it does not constitute precedent and is not subject to formal citation. <u>R.</u> 1:36-3.

Bernstein, Consolidated, and the other defendants from 1999 to the present, thus overlapping with the time period addressed in the Southland litigation.

The trial court in this case concluded that plaintiff's claims arise from the same core of related facts as those in the Southland litigation since both involved some of the same sales. The court ruled that the entire controversy doctrine, Rule 4:30A, barred plaintiff's claims against Bernstein and Consolidated because they could have been asserted as additional cross-claims in the Southland litigation. Requiring plaintiff to raise its claims in the earlier action would have promoted judicial efficiency and fairness to defendants, who had meant to settle all claims arising from their sales that were addressed in the prior litigation.

In its initial merits brief on this appeal, plaintiff challenged only the trial court's dismissal of those claims that had not yet accrued by the time Bernstein and Consolidated had each settled claims against them in the Southland litigation. In its reply brief, however, plaintiff changed course and argued that none of its current claims are barred by the entire controversy doctrine. Because plaintiff did not raise the latter argument in its initial merits brief, we deem it to have been waived. See Drinker Biddle & Reath LLP v. N.J. Dep't of

Law and Pub. Safety, 421 N.J. Super. 489, 496 n.5 (App. Div. 2011). An appellant may not raise new contentions for the first time in a reply brief. Borough of Berlin v. Remington & Vernick Engineers, 337 N.J. Super. 590, 596 (App. Div.), certif. denied, 168 N.J. 294 (2001).

Plaintiff, however, is correct as to its initial position on appeal. Application of the entire controversy doctrine does not preclude claims that had not yet accrued at the time of the earlier litigation. K-Land Corp. No. 28 v. Landis Sewerage Auth., 173 N.J. 59, 72 (2002). Plaintiff could not be expected to assert unaccrued claims against Bernstein and Consolidated during their participation in the Southland litigation. Any claims against those defendants that were unaccrued at the time of their dismissal from the Southland litigation must be reinstated.[9]

Affirmed in part; reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[9] Bernstein argues as an alternative ground for affirmance that plaintiff's claims should be dismissed for failure to comply with Rule 4:5-1. We find insufficient merit in the argument to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

A-2723-11T1