# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-3769-16T1
                 A-3770-16T1
                 A-2432-17T1
                 A-2434-17T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

        Plaintiff-Respondent,

v.

D.V. and A.B.-L.,

        Defendants-Appellants,

and

G.O.,

        Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF J.V.,
J.L.-V., K.L.-V. and B.L.-V.,

        Minors.

_____

Submitted September 24, 2019 – Decided November 6, 2019

Before Judges Fisher, Accurso and Rose.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket Nos. FN-07-0344-16 and FG-07-0181-17.

Joseph E. Krakora, Public Defender, attorney for appellant D.V. (Robyn A. Veasey, Deputy Public Defender, of counsel; Jennifer M. Kurtz, Designated Counsel, on the briefs).

Joseph E. Krakora, Public Defender, attorney for appellant A.B.-L. (Ifeoma Antonia Odunlami, Designated Counsel, on the briefs in A-3770-16; Mark Edward Kleiman, Designated Counsel, on the briefs in A-2434-17).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason Wade Rockwell, Assistant Attorney General, of counsel; Roman Guzik, Deputy Attorney General, on the briefs in A-3769-16 and A-3770-16; Casey Jonathan Woodruff, Deputy Attorney General, on the briefs in A-2432-17 and A-2434-17).

Joseph E. Krakora, Public Defender, attorney for minors (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Todd S. Wilson, Designated Counsel, on the briefs).

PER CURIAM

D.V. (Donna) and A.B.-L. (Albert) appeal from a finding that they abused and neglected then three-year-old J.V. (Jaden), two-year-old J.L.-V. (Jamie), and two-month-old K.L.-V. (Katie) and from the subsequent

2

termination of their parental rights to those children, as well as to B.L.-V. (Becky) born after commencement of the guardianship action.[1] Having consolidated the appeals for purposes of this opinion, we now affirm both judgments, essentially for the reasons expressed by Judge Paganelli in his thorough and well-reasoned opinions of November 30, 2016 and January 12, 2018.

The facts are fully set forth in Judge Paganelli's opinions and do not require repeating here. We note only the essentials, that is that the family first came to the attention of the Division in 2015, when Albert left Jaden and Jamie alone when he went to the liquor store, and kicked Donna in the stomach and back when they argued about it afterwards. She was then pregnant with Katie. Albert denied striking Donna or being drunk when alleged to have done it and refused to cooperate with the investigation. The Division closed its case after Donna assured the investigator she was no longer living with Albert and signed a family agreement promising she would not let him act as a caretaker for the children in the future.

---

[1] We employ fictitious names to protect the children's privacy. Although Donna and Albert are the parents of the three youngest children, Jaden, the eldest, is not Albert's son. Jaden's biological father did not participate in the litigation in the trial court and is not a party to the appeal.

A-3769-16T1

By early 2016, however, the couple was back together, and Donna was working nights. When Donna left Albert to watch the children one night while she worked, he broke eight of Katie's ribs, her femur and inflicted a serious brain injury that left her hospitalized for a month and in a residential care facility for the next twenty months.

At the fact-finding hearing in the subsequent abuse and neglect proceeding, the Division admitted defendants' statements to the police about Katie's injuries. Although both Donna and Albert initially denied that Albert was alone with the children when Katie was hurt, they eventually admitted he was watching all three children at the time. After suggesting several other explanations for Katie's condition, Albert finally told police that Katie had been restless, and Jaden and Jamie were jumping around and screaming as he tried to soothe the baby by rocking her. When Katie wouldn't stop crying, and the older children wouldn't settle down, he became upset and desperate and started rocking Katie harder and squeezing her tighter. As the situation wore on, he grew tense and started shaking Katie until she finally stopped crying a few minutes later.

Donna told police that when she got home, after 3:30 a.m., Jaden, who was "non-verbal," said "dad," gesturing to Albert, and made a shaking motion

4

with his hands. The next morning, Katie's eyes were rolled back in her head and she was clenching and unclenching her fists. Donna suggested taking her to the hospital but Albert resisted. Although both Donna and Albert had previously witnessed Jaden having a seizure, they delayed taking Katie to the hospital for well over a day. When they finally took Katie to the emergency room, her eyes were turning in circles and the doctors could not control her seizures.

Judge Paganelli accepted the testimony of the Division's expert, the medical director of the Metro Regional Diagnostic and Treatment Center, Dr. Weiner, board certified in pediatrics and child abuse pediatrics, who examined Katie and consulted with her treating doctors. She opined the child's injuries likely resulted from a single episode of forceful shaking, either from the shaking itself or, in the case of the rib fractures, from squeezing, and that defendants medically neglected Katie by failing to take her to the hospital sooner.

The judge rejected the opinion of defendants' pediatric neurologist that the rocking and shaking Albert described would not have caused the extent of Katie's brain injury, and was thus likely merely coincidental to meningitis, encephalitis, or cortical venous thrombosis. Judge Paganelli noted none of

5

Katie's doctors had diagnosed her with any of those conditions, and they were not apparent in the child's lab work. Defendant's neurologist had also not examined Katie, nor consulted with her treating doctors and did not believe abusive head trauma was a legitimate diagnosis, despite its recognition by the American Academy of Pediatrics.

Defendants' pediatric radiologist agreed with the Division's expert that the injuries to Katie's chest and ribs were likely caused by compression of her rib cage, but he concluded the injuries were more likely caused by "rough handling" rather than forcible shaking. Although Judge Paganelli found the radiologist's testimony as to the nature of Katie's injuries generally credible, he rejected his conclusion that they resulted from rough handling as inconsistent with Albert's description of events.

Having given the parties advance notice in accordance with New Jersey Division of Youth and Family Services v. R.D., 207 N.J. 88, 120 (2011), that he would make his findings pursuant to the higher Title Thirty "clear and convincing" standard if supported by the proofs, Judge Paganelli found the Division proved by clear and convincing evidence that defendants had abused and neglected all three children.

6

Specifically, the judge found inadequate supervision by both Donna and Albert based on admissions in their statements to the police that they occasionally left all three children alone in order to take out the trash or buy food when the two toddlers were asleep or watching television. The judge noted the children were described by witnesses "as aggressive, fighting badly, screaming, throwing things, fighting over the television, playing hard, jumping on furniture," and often "needed to be separated." Although noting such "behavior may be somewhat expected for children of this age group," the judge found that fact, and that the children couldn't yet talk, "offers the very reason why the children cannot be left unsupervised by their parents." The judge also found Donna improperly supervised the children by leaving them alone with Albert after acknowledging he was not an appropriate supervisor for the children in the family agreement she entered into with the Division.

Judge Paganelli found Albert physically abused Katie by deliberately causing her "extensive brain and retinal injuries" as well as bone fractures based on Albert's admissions of squeezing and shaking Katie, the objective proof of those injuries and Dr. Weiner's testimony that Albert's actions caused Katie's injuries. The judge also found Albert exposed Jaden and Jamie to a substantial risk of harm by physically abusing Katie while caring for the older

children as witnessed by Jaden. The judge found both Donna and Albert medically neglected Katie by their delay in getting her to the hospital after seeing her eyes turned up and the abnormal clenching of her hands.

Judge Paganelli applied those clear and convincing findings, with the exception of the "statement" attributed to Jaden of Albert shaking Katie, see N.J. Div. of Child Prot. & Permanency v. T.U.B., 450 N.J. Super. 210, 213-14 (App. Div. 2017), to find the Division proved the first prong of the best interests standard in the subsequent guardianship trial, that the children's health and development has been endangered by the parental relationship. See N.J.S.A. 30:4C-15.1(a)(1).

He found the Division proved the second prong as to Donna, that the parent was unable or unwilling to eliminate the harm, N.J.S.A. 30:4C-15.1(a)(2), based on the testimony of the Division's neuropsychologist, Dr. Mack, that "there is an organic etiology to [Donna's] poor judgment" and maladaptive behavioral patterns, including her inability to separate from Albert because she claimed she "had no one else to help her," and still did "not know if he ha[d] done anything wrong" with regard to Katie, despite overwhelming proof of the injuries he caused the two-month-old. The judge also accepted Dr. Mack's view that the prognosis for Donna becoming an independent

minimally effective parent "is extremely poor based on her neuropsychological and psychological makeup."

The judge found Albert was unwilling or unable to eliminate the harm he posed to the children because he denied any responsibility for Katie's injuries in his interview with the Division's psychologist, Dr. Dyer. Dr. Dyer reported Albert claimed Katie's bones were not actually broken and that her injuries may have been caused by a blood disorder or by restlessly moving around excessively.

Judge Paganelli found the Division easily proved it had made reasonable efforts to help Donna and Albert correct the circumstances leading to the children's removal under the third prong, N.J.S.A. 30:4C-15.1(a)(3), although Dr. Mack opined there were no services that could make either a minimally effective parent in the foreseeable future, and found no alternatives to termination of their parental rights.

As to the fourth prong, that termination not do more harm than good, N.J.S.A. 30:4C-15.1(a)(4), the judge relied on the bonding evaluations conducted by Dr. Dyer. Dr. Dyer found no bond between either Donna or Albert and Katie and Becky as both had been removed from the care of their parents at an extremely early age. Becky, only ten months old at the time of

the evaluation, had never lived with them, and Katie was not yet three months old when Albert injured her. Both children were in the care of families wanting to adopt them, in Katie's case, a nurse who had cared for her during her twenty months in a residential care facility.

Dr. Dyer concluded Katie's "emotional needs would be more adequately addressed by a permanent caretaker other than her birth mother." As for Becky, Dr. Dyer believed reunifying her with Donna before her first birthday when an attachment to her resource parent would begin to develop would be the best option, but only if Donna could separate from Albert and manage to become a minimally fit parent within that timeframe.

The situation with Jaden and Jamie, who had been placed together, was more complicated. Both children had an attachment to Donna, and Jamie was also attached to Albert. Dr. Dyer found Jamie also had an attachment to her resource parent. He opined that terminating Jamie's relationship with either Donna or the resource father would likely cause her "a similarly distressing loss," less with Albert, which the resource father would be able to mitigate, but Donna, because of her psychological problems, would not.

Dr. Dyer found Jaden had also formed a "very close emotional tie" to his resource father, who provided the child with "appropriate structure,

10

nurturance, positive role modeling, physical safety, and emotional security," but that Donna remained Jaden's "central parental love object." Although Dr. Dyer acknowledged that reunifying Jaden with Donna would confer some therapeutic benefit, he noted Jaden did not receive adequate stimulation and structure when he lived with defendants. He accordingly concluded that reunification would likely cause Jaden to "suffer a regression in learning and behavior due to [Donna's] persisting problems," adding that a failed reunification would be an "absolute disaster" for the child. Termination of Jaden's relationship with Donna, on the other hand, would likely have a "disorganizing and distressing effect on [him] that runs the risk of inflicting long-term or serious psychological harm," which Dr. Dyer believed Jaden's resource father would be able to mitigate, but not eliminate completely.

Donna and Albert did not present an expert to counter those testifying on behalf of the Division and did not offer any other witnesses. Neither testified. Based on the bonding evaluations, Judge Paganelli found "clearly and convincingly" that termination of Donna's and Albert's parental rights as to all four children "will not do more harm than good." The judge noted that Dr. Dyer's opinion that reunification with Donna should be considered for Becky and Jaden was "tethered to [Donna] being able to extract herself from [Albert]

11

and, more importantly, address her problems," neither of which the court concluded was remotely likely. Concluding based on the expert testimony that neither Donna nor Albert would ever likely become minimally fit parents, the judge found "neither parent can offer the children the safe and stable placement they deserve."

Defendants appeal, arguing the court erred in concluding they abused or neglected Jaden, Jamie and Katie and that the Division failed to prove all four prongs of the best interests standard by clear and convincing evidence. The Law Guardian joins the Division in urging that we affirm both judgments.

We find defendants' various arguments, all of which are premised entirely on alleged errors in the judge's fact finding, utterly without merit.[2]

---

[2] Although both defendants assert their statements to police were coerced and, to that extent, unreliable, Donna adds that the neuropsychological condition diagnosed by the Division's expert in the guardianship matter was particularly relevant to a determination of the reliability of her statement. She further contends she could not have litigated the issue in the abuse and neglect matter because the evidence was not yet available, and was precluded from doing so in the guardianship case based on collateral estoppel. We do not address this argument, which she raises for the first time on appeal despite an adequate opportunity to investigate and raise the issue in the trial court, see Nieder v. Royal Indemnity Ins. Co., 62 N.J. 229, 234 (1973), and only explicitly in her reply brief, thereby compounding the problem, see L.J. Zucca, Inc. v. Allen Bros. Wholesale Distribs. Inc., 434 N.J. Super. 60, 87 (App. Div. 2014) ("An appellant may not raise new contentions for the first time in a reply brief."). We note only that the evidence in the record on Donna's neuropsychological

12

The trial court "has the opportunity to make first-hand credibility judgments about the witnesses who appear on the stand; it has a 'feel of the case' that can never be realized by a review of the cold record." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008) (citation omitted). We are not free to overturn the factual findings and legal conclusions of a trial judge "unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974) (citation omitted).

Because the trial judge's findings that Donna and Albert abused and neglected Jaden, Jamie and Katie, and that the Division proved all four prongs of the best interests standard as to all three children and Becky by clear and convincing evidence have that support in the record, we affirm the judgments in both matters substantially for the reasons expressed by Judge Paganelli in his thorough and thoughtful opinions accompanying each.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

condition is limited to its effect on her ability to parent. There is nothing in the record as to its implications, if any, for the reliability of her statements to police.

A-3769-16T1