749 A.2d 862 (2000)
330 N.J. Super. 310
Helen OLTREMARE, Plaintiff-Appellant,
v.
ESR CUSTOM RUGS, INC., Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued March 22, 2000.
Decided April 25, 2000.
*863 Michael S. Harwin, Fair Lawn, for plaintiff-appellant (Donald A. Rosenfelt, Clifton, attorney; Mr. Harwin, on the brief).
H. Neil Broder, Livingston, for defendant-respondent.
Before Judges KING,[1] LEFELT and LINTNER.
The opinion of the court was delivered by LINTNER, J.S.C. (temporarily assigned).
Plaintiff filed a prior law suit, on April 8, 1998, in the Special Civil Part, Bergen County, naming Don of Fountain, Inc. (Fountain) and ESR Custom Rugs (ESR) as defendants. The complaint sought property damage resulting from a defective rug plaintiff purchased through Fountain, an interior decorator, and ESR, the manufacturer. A Stipulation of Dismissal with prejudice, settling the Bergen County suit, was signed by plaintiff and defense *864 counsel respectively on June 16 and June 18, 1998. A second complaint, the subject matter of this appeal, was filed in Hudson County Special Civil Part, on July 22,1998, and served on July 30, 1998, on ESR.[2] The second complaint, which sought property damage as a result of a defect in a different rug and named ESR as the only defendant, was dated June 2, 1998, and sent to Hudson County for filing on July 8, 1998.
On September 22, 1998, the motion judge, after hearing oral argument, granted defendant's motion for summary judgment based upon the entire controversy doctrine and entered an order dismissing the complaint. Thereafter, defendant moved for sanctions and plaintiff, in response, cross-moved for reconsideration of the order dismissing plaintiff's complaint. By order of November 30, 1998, the motion judge awarded defendant $500 in counsel fees as sanctions pursuant to R. 4:5-1(b)(2), and denied plaintiff's motion for reconsideration. Plaintiff appeals contending, among other things, that the entire controversy doctrine does not apply. We agree and reverse the order of dismissal and remand the imposition of the $500 sanction to permit the trial court to make a factual determination concerning the date when the Hudson County complaint was prepared by plaintiff's counsel.
We briefly recite the facts relevant to the issues raised. Fountain is an interior decorator/design firm. ESR is a rug manufacturer in the business of making custom carpets. Plaintiff ordered a total of five custom rugs from Fountain. Fountain, in turn, contracted with Tex-Style Carpet and Rugs, Inc. (Tex-Style) to obtain the custom rugs. Tex-Style, in turn, ordered the rugs from ESR. Except for some alleged interaction by ESR, which contends that it sent a representative to plaintiff's home to inspect samples for color coordination, plaintiff had no direct dealings with ESR. Tex-Style ordered four of the five rugs from ESR on September 9, 1996, as evidenced by ESR's invoice # 1595A-D. The invoice indicates that Fountain had placed the order on August 20, 1996. A second invoice, # 1734, dated July 15, 1997, was issued by ESR on July 15, 1997, for an order placed on April 1, 1997. The record does not reflect whether either of the rugs involved in the two actions was the one referenced in the second invoice.
Plaintiff experienced problems with two carpets after installation. One of the carpets, a black and white rectangular rug with an oval center began to shed. The second rug, an oriental carpet, experienced fading in the portion facing the windows.
The first complaint, filed by plaintiff in Bergen County, was limited to a cause of action seeking damages equal to the purchase price of $7,486.66, for the alleged defect in the black and white rug. The Bergen County complaint named both Fountain and ESR as defendants and alleged that the carpet was purchased by plaintiff on March 24, 1997. ESR settled with plaintiff for $3,052.32 on June 16, 1997.
The subject matter of plaintiff's second complaint, which sought damages of $4,722, pertained only to the alleged defect in the oriental carpet. Like the prior complaint, the subsequent Hudson County complaint alleged that the oriental carpet was purchased on March 24, 1997. Defendant maintains that the subject matter of the second complaint is derived from the same transactional claim surrounding the allegations in the first complaint. Defendant further asserts that plaintiff was fully aware of the existence of the claim arising out of the defect in the oriental rug at the time she settled the first claim involving the black and white rug and dismissed the Bergen County Special Civil Part action. Defendant argues that plaintiff's knowledge of the claim concerning the second rug, combined with the fact that both rugs were purchased in the same transaction or *865 series of transactions, is sufficient to trigger the entire controversy doctrine.
The entire controversy doctrine has continually evolved from common law. Prior to its confirmation in article 6, section 3, paragraph 4 of the 1947 Constitution, it was recognized as a basic principle of common law. Cogdell v. Hospital Ctr., 116 N.J. 7, 15, 560 A.2d 1169 (1989); Smith v. Red Top Taxicab Corp. 111 N.J.L. 439, 440-41, 168 A. 796 (E. & A.1933). In Cogdell, supra, the Court recognized that the doctrine "encompasses a mandatory rule for the joinder of virtually all causes, claims, and defenses relating to a controversy between the parties engaged in litigation." 116 N.J. at 16, 560 A.2d 1169 (emphasis added). The doctrine is intended to be applied to prevent a party from voluntarily electing to hold back a related component of the controversy in the first proceeding by precluding it from being raised in a subsequent proceeding thereafter. It thereby prevents "the evil of ... piecemeal litigation of fragments of a single controversy." Wm. Blanchard Co. v. Beach Concrete Co., Inc., 150 N.J.Super. 277, 292-93, 375 A.2d 675 (App. Div.), certif. denied, 75 N.J. 528, 384 A.2d 507 (1977). Failure to comply with the entire controversy doctrine may preclude a party from maintaining a subsequent action.
Rule 4:27-1 provides that "subject to R. 4:30A," a plaintiff "may join ... as many claims ... as he or she may have against an opposing party." Thus, R. 4:27-1 provides for permissive joinder, unless the entire controversy doctrine is triggered. Rule 4:30A codifies the preclusion sanction imposed by the entire controversy doctrine in the event a party fails to join claims that are required to be joined. However, the sanction of preclusion should be applied only as a remedy of "last resort." Gelber v. Zito Partnership, 147 N.J. 561, 565, 688 A.2d 1044 (1997).
In Vision Mortgage Corp., Inc. v. Patricia J. Chiapperini, 156 N.J. 580, 584, 722 A.2d 527 (1999), the Supreme Court was faced with determining whether or not a second suit claimed to be barred by the entire controversy doctrine arose from the same series of transactions. In Vision, the plaintiff retained the defendant to appraise real-estate for the purpose of determining the amount that it would loan on a purchase money mortgage. Id. at 582, 722 A.2d 527. The defendant appraised two separate parcels of property and, based upon his opinion, the plaintiff entered into mortgage loans. Ibid. When one of the mortgagors defaulted, the plaintiff foreclosed and learned that the property was worth significantly less than the amount of the appraisals. Id. at 583, 722 A.2d 527. The plaintiff sued for negligent appraisal regarding one of the properties and settled before trial. Ibid. The plaintiff, thereafter, brought a second suit against the defendant for negligence in appraising the other parcel. Ibid. The defendant sought summary judgment based upon the entire controversy doctrine and the fact that the plaintiff was aware of the second cause of action prior to the settlement of the first. Ibid. The trial court granted the defendant's motion and dismissed the second suit. Ibid. In affirming our reversal of the trial court, the Supreme Court pointed out that the transactional facts were different enough to warrant not invoking the entire controversy doctrine. Id. at 584, 722 A.2d 527. The Supreme Court indicated that the facts would have been stronger had there been a master contract between Chiapperini and Vision. Ibid.
The controlling facts before us are similar to those in Vision. Here, we are dealing with different alleged defects in different rugs manufactured by defendant, ESR. Furthermore, plaintiff's only direct dealings were with Fountain, not ESR. While Fountain ordered all the carpets from one source, plaintiff never dealt directly with the manufacturer and had no master agreement with it. Had plaintiff sued Fountain in two separate suits, a defense *866 based upon the entire controversy doctrine on behalf of Fountain might very well lie. While plaintiff's purchase of the carpets were from the same source, the action against the manufacturer, in essence, is a property damage products liability case based upon breach of warrantee or defective manufacture of different products. Though manufactured by the same defendant, the two products were manufactured at different times and the allegations relate to different controversies, i.e., different defects in different carpets.
We do not find any undue prejudice flowing to ESR insofar as its ability to defend the second action as a result of non-joinder. Moreover, the settlement of the first suit was consensual and, presumably, amicably resolved the issues limited to the alleged defect in the one carpet which was the subject matter of that action.
We next turn to the imposition of sanctions for violation of R. 4:5-1(b)(2). The applicable portion of the current rule requires that "[e]ach party shall include with the first pleading a certification as to whether the matter in controversy is the subject of any other action pending in any court ... or whether any other action ... is contemplated; and, if so, the certification shall identify such actions and all parties thereto." R. 4:5-1(b)(2)(emphasis added). The rule imposes a continuing obligation to file and serve an amended certification if there are changes in the facts stated in the original certification. Ibid. The rule also provides that, if a party fails to comply, the court may impose an appropriate sanction including dismissal of a successive action. Ibid. The sanction of dismissal may not be imposed unless it is determined that the failure to comply was inexcusable and the right of the undisclosed to defend the successive action has been substantially prejudiced by not having been identified in the prior action. Ibid. Recognizing that the current rule requires counsel in an action to inform the court of non-parties who should be joined in the action or are subject to joinder, the Supreme Court in Vision Mortgage Corp., Inc., supra, added the following:
It strikes us that counsel should also inform the court of other potential claims that it may have against the same party. One of the goals of the entire controversy doctrine is the efficient judicial administration of multiple claims.... We request that the Civil Practice Committee consider that issue in the next rule cycle.
[156 N.J. at 584-85, 722 A.2d 527 (emphasis added).]
One of the primary goals of the entire controversy doctrine is to permit the trial court an opportunity to manage multiple claims in an effort to foster efficient, judicial administration. Id. at 585, 722 A.2d 527. The administrative objectives of the doctrine are to afford complete and final disposition by avoiding piecemeal litigation and fostering efficiency by the reduction of delay and avoidance of waste. Cogdell, supra, 116 N.J. at 15, 560 A.2d 1169. The purpose behind the 1998 changes in R. 4:5-1(b)(2) was the implementation of the same administrative philosophy. Pressler, Current N.J. Court Rules, comment 3 on R. 4:5-1 (2000). Therefore, if plaintiff's attorney prepared the second complaint on June 2, 1998, it would lead us to the inescapable conclusion that he was contemplating a second proceeding against ESR prior to the June 18, 1998, settlement of the first action. The imposition of a sanction for failure to comply with the certification requirement would be warranted, given the express provisions of R. 4:5-1(b)(2), and the administrative goals that it is intended to accomplish. Certainly, under such circumstances, a plaintiff's attorney's failure to file the required certification violates the spirit, if not the express provisions of the rule.
*867 At oral argument, on the return date of defendant's motion to dismiss, plaintiff's attorney represented to the motion judge that the complaint was prepared on July 8, 1998, the date it was mailed to Hudson County. He also advised that the complaint in question was created from the last complaint in his computer, which he "pasted," inferring that the date was mistakenly not changed. He further represented that neither he nor his client knew at the time the first case was settled that ESR was the manufacturer of the oriental carpet. In assessing the sanction, the motion judge said:
I don't believe quite honestly that there was an intentionalany intentional act on the part of this young attorney to try to causeannoy or harass this defendant. I just believe that he may have misinterpreted the applicable laws or the applicable rule and assumed that he could proceed in this way without giving proper notice to the defendant.
We conclude that before imposing sanctions for violation of R. 4:5-1(b)(2), the motion judge should have determined factually whether or not plaintiff's counsel was contemplating a second law suit against defendant at or before the time the first action was settled. We cannot tell from the record whether the motion judge made specific findings of fact concerning when plaintiff's counsel actually prepared the second complaint. If the motion judge determines that the second complaint was, in fact, prepared on June 2, 1998, then, inferentially, it can be concluded that plaintiff's attorney was contemplating the second action prior to the settlement of the first. Furthermore, the motion judge may wish to reconsider his decision to impose a sanction in light of our determination that the entire controversy doctrine does not apply.
We are compelled to make the following additional comments concerning plaintiff's contentions. In support of her position that the trial judge should not have granted summary judgment and imposed sanctions, plaintiff submitted two affidavits indicating that, at the time of the settlement of the first suit, she was not aware that the carpet which was the subject matter of the subsequent suit was manufactured by ESR. Plaintiff urges that the trial judge should have at least held a plenary hearing to determine whether she was, in fact, aware of the existence of a potential second claim against ESR at the time the first suit was settled. Plaintiff's arguments concerning her lack of knowledge are not convincing. Knowledge possessed by an attorney relative to the prosecution of a cause of action is generally imputed to the client. State v. Buonadonna, 122 N.J. 22, 45, 583 A.2d 747 (1991). The imputation of an attorney's knowledge to a client is even more appropriate when dealing with facts that are associated with the type of advice traditionally given by an attorney, such as how and when to settle or file a lawsuit. Thus, plaintiff cannot gain solace by claiming that she did not have specific knowledge of who manufactured the oriental carpet at the time her attorney settled the first suit, if it is determined that her attorney was aware of the culpable party and was contemplating the filing of a second law suit.
The judgment of the Special Civil Part is reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] Judge King did not participate in oral argument. However, the parties consented to his participation in the decision.
[2] The complaint was stamped received by the Hudson County Special Civil Part on July 13, 1998, but not stamped filed until July 22, 1998.