834 A.2d 409

BARBARA THOMAS AND GEORGE M. THOMAS, PLAINTIFFS–
APPELLANTS, v. DOROTHY HARGEST, AS ADMINISTRATOR
OF THE ESTATE OF JOHNATHAN HARGEST, DEFENDANT–
RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 16, 2003—Decided October 31, 2003.

Before Judges KING, LINTNER and BILDER.

*Joseph C. Grassi* argued the cause for appellants (*Rossi, Barry, Corrado & Grassi,* attorneys; *Suzanne Pasley,* on the brief).

*Marc L. Hurvitz* argued the cause for respondent (*Marc L. Hurvitz & Associates,* attorneys; *William M. Davis,* on the brief).

The opinion of the court was delivered by

KING, P.J.A.D.

This case calls for an application of the "entire controversy" doctrine and the principles of mandatory joinder embodied in *R.* 4:30A.[1] The Law Division judge granted summary judgment to defendant. We reverse. We find that dismissal of plaintiff Barbara Thomas' personal injury action was a disproportionately harsh and inequitable remedy in this circumstance.

This case arose out of a motor vehicle accident on April 29, 2001 on Route 47 in Cape May Court House, Cape May County. According to the police accident report, Barbara Thomas was driving her Ford Tempo in a southerly direction on Route 47, about to make a left-hand turn into a private driveway. Johnathan Hargest was operating a motorcycle when he went into the north-bound lane of Route 47 to pass two vehicles following the Tempo. While passing these vehicles, Hargest crashed into

---

[1] *R.* 4:30A states:

Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by *R.* 4:64–5 (foreclosure actions) and *R.* 4:67–4(a) (leave required for counterclaims or cross-claims in summary actions).

Thomas' Tempo as she was making her turn. Hargest was ejected from the cycle upon impact and was found lying in a bush adjacent to the north-bound shoulder of the highway. He died as a result of the accident.

After the fire department removed her from her vehicle, Thomas was transported to Burdette Tomlin Memorial Hospital where she was admitted for observation, stabilization and pain management, and given a preliminary diagnosis of multiple contusions. Her condition improved and she was discharged on May 2, 2001 with a primary diagnosis of multiple contusions, and a secondary diagnosis of cervical strain, contusions of her left shoulder, and post-traumatic stress disorder.

On the day of her discharge, Thomas retained Joseph Grassi, Esq., to represent her in her personal injury claim arising from the motor vehicle accident. On May 18, 2001 William Miley, a psychologist, evaluated Thomas and issued a report saying she suffered from acute traumatic stress disorder because of the motor vehicle accident. He recommended she undergo three to six months of regular psychotherapy and obtain antidepressant medication from a physician.

Thomas underwent an MRI of her cervical spine on May 25, 2001 because she still experienced neck pain. The MRI disclosed that she had herniated discs at the C4–5 and C5–6 levels. Thomas underwent a course of physical therapy for her neck pain beginning on May 21, 2001. Dr. Hershkowitz, a neurosurgeon, examined her on June 1, 2001. The examination disclosed paravertebral muscle spasm with spinal tenderness, bilateral shoulder tenderness and a decreased range of neck motion. He recommended that physical therapy continue, but he did not feel that surgical intervention was necessary at that time. Thomas continued receiving physical therapy through autumn of 2001.

Grassi, the personal injury attorney retained by Thomas, obtained a report dated July 1, 2001 from Frank Costanzo, an accident reconstruction expert. According to this report, decedent Hargest operated his motorcycle in a reckless and dangerous

manner at the time of the accident because of his excessive speed while passing other vehicles. He concluded Thomas' left-hand turn maneuver did not violate any motor vehicle laws and was not a contributing cause of the accident.

On July 12, 2001 Dorothy Hargest, individually, and as administratrix ad prosequendum of Johnathan Hargest, filed a complaint in the Superior Court, Law Division, against Barbara and George Thomas. The first count set out a wrongful death action against Barbara Thomas. The second count set out a survival action against Thomas. The complaint also sought judgment against George Thomas, alleging that Barbara Thomas negligently operated her vehicle as his employee.

The Thomas' insurance carrier retained Louis Niedelman, Esq., to represent them in defense of the wrongful death and survival action. On about October 31, 2001 Niedelman filed an answer on the Thomas' behalf denying the allegations of the complaint. The answer did not assert any claim for personal injuries sustained by Barbara Thomas. Niedelman certified pursuant to *R.* 4:5–1(b)(2) that no other action was pending or contemplated.

Grassi and Niedelman communicated at various times on their mutual representation of Barbara Thomas. Grassi told Niedelman that although Thomas intended to pursue her personal injury claim, it was not yet "ripe" because she was still receiving treatment. In order to assist Niedelman with the defense of the wrongful death and survival action Grassi forwarded his investigative file to Niedelman on July 19, 2001. This included the police accident report, decedent's driver's abstract, a statement that Barbara Thomas gave to the police, Costanzo's accident reconstruction report, and Barbara Thomas' insurance policy.

The wrongful death and survival action was then settled in late December. A stipulation of dismissal with prejudice dated January 3, 2002 was filed on January 8. In late December 2001 Grassi learned the matter had been settled, but only after the fact. Niedelman did not consult him before the Hargest death claim settled. The Hargest death case apparently settled close to or at

the policy limits of $50,000, according to counsel's representation at oral argument.

On January 10, 2002, about one week after the stipulation of dismissal was executed and just two days after it was filed, Grassi filed a personal injury complaint on the behalf of Barbara and George Thomas behalf in the Superior Court, Law Division, against Dorothy Hargest, as administrator of the estate of Johnathan Hargest. In the first count, Barbara Thomas alleged that, as a result of decedent's negligence, she sustained physical and mental injuries for which she underwent treatment and will continue to undergo treatment in the future. In the second count, Barbara Thomas alleged that her vehicle was declared a total loss as a result of the collision. In the third count, George Thomas asserted a loss of consortium claim. Grassi certified pursuant to *R.* 4:5–1 that the matter in controversy had been the subject of a prior complaint, later dismissed following a settlement.

Hargest filed an answer on March 27, 2002 which denied the material allegations of the complaint. The answer included the defense that the entire controversy doctrine barred the complaint.

On May 31, 2002 Barbara Thomas returned to her psychologist, Dr. Miley, complaining of an exacerbation of her post-traumatic stress disorder symptoms. She was seen by Miley on a weekly basis with continuation of symptoms even though her antidepressant medication was increased. Miley recommended psychotherapy once every two weeks until Thomas' symptoms subsided. He anticipated that her symptoms would eventually subside.

On June 10, 2002 defendant Hargest filed a motion for summary judgment based on the entire controversy doctrine. Defendant Hargest argued the plaintiffs were required to assert their claims for injuries arising out of the motor vehicle accident in the earlier wrongful death action Hargest brought since those claims arose out of the same occurrence. Hargest argued that there were no special equities which would abrogate the doctrine's application.

The Thomas' responded that the entire controversy doctrine did not apply because Barbara Thomas' personal injury claim was not ripe when the original complaint was pending, her continuing treatment status was uncertain, and the prognosis and permanency of her condition were unknown. (In the Thomas' brief they acknowledge that verbal threshold issues are not implicated in this case.) Barbara and George Thomas also argued they would probably not have been able to comply with "Best Practices" procedures had her personal injury claim been asserted in the original suit because numerous discovery extensions would have been necessary.

The Law Division judge issued a letter opinion granting Hargest's motion for summary judgment on the basis of the entire controversy doctrine. In doing so, the judge relied on *Prevratil v. Mohr*, 145 *N.J.* 180, 678 *A.*2d 243 (1996), where the Supreme Court held that the entire controversy doctrine applies to actions arising out of automobile-accidents. The judge gave these reasons for his decision:

At the time that Thomas filed her answer to the Hargest complaint, her claim was not premature or unaccrued. She had already spent three days in the hospital, and had already begun treating for her psychological and cervical injuries. She had retained an accident reconstructionist who had rendered a report. The information regarding her injuries as well as the expert report, were made available to her attorney. This Court acknowledges that there are equitable exceptions to the entire controversy doctrine to avoid harsh results. However, in this matter there are no exceptions.

The entire controversy doctrine requires a litigant to assert in one action all claims arising from a single controversy. *Woodward–Clyde Consultants v. Chem. & Pollution Sci., Inc.*, 105 *N.J.* 464, 473, 523 *A.*2d 131 (1987). The determination of whether claims must be joined in a single action depends on whether they arise from a core set of related facts. *Garvey v. Township of Wall*, 303 *N.J.Super.* 93, 100, 696 *A.*2d 71 (App.Div.1997). The doctrine is "intended to be applied to prevent a party from voluntarily electing to hold back a related component of the controversy in the first proceeding by precluding it from being raised in a subsequent proceeding thereafter." *Oltremare v. ESR*

*Custom Rugs, Inc.,* 330 *N.J.Super.* 310, 315, 749 *A.*2d 862 (App. Div.2000). Consequently, a defendant who fails to raise a germane counterclaim will be estopped from proceeding with it in a subsequent separate action. *Woodward–Clyde,* 105 *N.J.* at 473, 523 *A.*2d 131.

Underlying the entire controversy doctrine are the twin pillars of efficient judicial administration and fairness to the parties. *Id.* at 472, 523 *A.*2d 131. It is neither fair nor efficient to fragment a single controversy into separate actions; such fragmentation can harass litigants, delay final adjudication, and waste judicial resources. *Ibid.* The doctrine is an equitable one whose application is left to judicial discretion based on the facts of individual cases. *Oliver v. Ambrose,* 152 *N.J.* 383, 395, 705 *A.*2d 742 (1998).

The plaintiff whose claim is barred must have had a fair and reasonable opportunity to fully litigate her claim in the prior action. *Id.* at 396, 705 *A.*2d 742; *Karpovich v. Barbarula,* 150 *N.J.* 473, 481, 696 *A.*2d 659 (1997). Where the plaintiff had sufficient information to have included the claim in the prior suit, mandatory joinder is fair. *Oliver,* 152 *N.J.* at 396, 705 *A.*2d 742. However, the filing of premature or unaccrued claims is not encouraged or required. *K–Land Corp. No. 28 v. Landis Sewerage Auth.,* 173 *N.J.* 59, 74, 800 *A.*2d 861 (2002).

In *Prevratil,* 145 *N.J.* at 183, 678 *A.*2d 243, the Supreme Court confirmed that the entire controversy doctrine applies to actions arising out of automobile-accidents and that litigants in such cases must assert any affirmative claims in the course of a single litigation. *Prevratil* arose out of a multi-vehicle automobile accident. The plaintiff Prevratil, an insured driver, brought suit for personal injuries. This suit was brought almost one year after the settlement of an earlier personal injury claim another party, Olsen, brought, based on the same accident, and in which the *Prevratil* plaintiff had been one of several defendants. Olsen settled with defendants Mohr and Hill. She dismissed her claims against Prevratil and Benjo. *Id.* at 183–84, 678 *A.*2d 243.

The settlement of Olsen's claim had occurred seven months after the suit was filed. *Id.* at 184, 678 *A.*2d 243. Prevratil's answer to the Olsen suit did not assert any counterclaims for personal injuries even though three months after the accident, Prevratil had consulted his personal attorney about filing an action for personal injuries arising out of the accident. *Id.* at 184–85, 196, 678 *A.*2d 243. Moreover, while the first action was pending, Prevratil had consulted an attorney about filing a workers' compensation claim for the same injuries. *Id.* at 185, 196, 678 *A.*2d 243. While Prevratil was represented in the first action by counsel retained by his employer's insurance carrier, Prevratil knew of the pendency of the first suit. *Id.* at 183–85, 196, 678 *A.*2d 243.

The Supreme Court observed that the attorney selected by the insurance carrier owed his first allegiance to the insured and bore the responsibility to represent him properly in all respects. *Id.* at 194, 678 *A.*2d 243. Although finding ample evidence to support the judgment of the lower courts which dismissed the second suit on the ground that it was barred by the entire controversy doctrine, the Supreme Court, out of an abundance of caution, remanded to the trial judge to reconsider once again the fairness of the dismissal. *Id.* at 185–86, 196–97, 678 *A.*2d 243. We do not know the final resolution.

The Thomas' argue that the equitable exception to the entire controversy doctrine should be applied in this case because, during the pendency of the initial action, the status of Barbara Thomas' injuries with "respect to the extent of any continued treatment, prognosis, and permanency was unknown." They contend that the assertion of a counterclaim in the initial action would have forced them prematurely into litigation and deprived them of the opportunity to fully develop and litigate their claims. But the mere fact that damages might be uncertain does not delay the accrual of a cause of action for purposes of the entire controversy doctrine. *Hobart Bros. Co. v. Nat'l Union Fire Ins. Co.,* 354 *N.J.Super.* 229, 245, 806 *A.*2d 810 (App.Div.2002). The doctrine

does not require that all or even the greater part of the damages be fixed and ascertainable before the cause of action accrues. *Ibid.*

Although in deciding whether to apply the entire controversy doctrine, a judge may consider if an injured party lacks sufficient information to assert a claim because of uncertainty about the permanency of the loss of use of a body organ or member, the significance of limitation of use of a bodily function or system, or the extent of impairment of a nonpermanent injury, *Prevratil,* 145 *N.J.* at 197, 678 *A.2d* 243, such concerns are misplaced in the present case; the verbal threshold is not an issue here. At the time that the Thomas' answer was filed in the first action, Barbara Thomas had spent three days in the hospital, had a diagnosis of two herniated discs, a cervical strain and post-traumatic stress disorder, had begun treatment for her psychological and cervical injuries, and had retained an attorney to pursue her personal injury claim.

The Thomas' alternative contention is that, had they filed a counterclaim in the prior action, the discovery deadlines of "Best Practices" would apply, putting them at the risk of losing the opportunity to fully develop and litigate their claims. This argument is not particularly persuasive because under *R.* 4:24–1(c) an extension of the discovery period can be obtained. This Rule provides in pertinent part:

> The parties may consent to extend the time for discovery for an additional 60 days.... If the parties do not agree or a longer extension is sought, a motion for relief shall be filed with the Civil Presiding Judge or designee in Track I, II, and III cases and with the designated managing judge in Track IV cases, and made returnable prior to the conclusion of the applicable discovery period. The court may, for good cause shown, enter an order extending discovery for a stated period, and specifying the date by which discovery shall be completed.
>
> [*Ibid.*]

Of course, " 'absent' exceptional circumstances" no extension of discovery may be permitted after an arbitration or trial date is fixed. *Id.*

However, we think the timing in this case is simply too close to compel the severe sanction of a dismissal of Barbara Thomas' potentially meritorious injury claim. We cannot justify a dismissal on grounds of fairness, equity or efficiency. The stipulation of dismissal of the Hargest's death claim was executed on January 3 and filed in the Clerk's office on January 8. The Thomas' suit was filed on January 10. True, both counsel for Thomas were probably remiss in not better communicating and coordinating their efforts. But we think the severe penalty of dismissal is disproportionate, especially when visited upon an otherwise innocent party. *Cf. Abtrax Pharms., Inc. v. Elkins–Sinn, Inc.*, 139 *N.J.* 499, 521, 655 *A.*2d 1368 (1995) (approving the extreme sanction of dismissal where litigant deliberately obstructs and corrupts full discovery).

If Grassi had filed Thomas' suit forty-eight hours earlier and then moved to consolidate, all would be in order. If the preclusive entire controversy doctrine is applied relentlessly to dismiss the Thomas' suit, a new and more complex law suit would soon follow against both attorneys and probably against the Hargest insurance carrier, as Niedelman's principal. This new law suit would require a trial within a trial to adjudicate both automobile tort and legal malpractice issues, hardly a paradigm of efficiency.

We also are quite mindful of the Supreme Court's recent comments in its latest decision on the entire controversy doctrine observing and emphasizing that the "polestar" for the application of the doctrine is "judicial fairness." *K–Land*, 173 *N.J.* at 74, 800 *A.*2d 861. Prejudice is a major element of overall fairness. *Id.* at 75, 800 *A.*2d 861. The defense here shows absolutely no prejudice if we reverse. There was no substantial time lapse between actions. There has not been extensive discovery. There were no prior adjudicative proceedings. An affirmance would, of course, visit the ultimate prejudice on Thomas, knocking out her claim without a hearing on the merits—a wisp of efficiency perhaps, gained at the cost of crushing prejudice. We do not think a dismissal is fair in this context.

Reversed.