**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3794-19

LIGIA RIZESCU and
TIMOTHY KING,

     Plaintiffs-Appellants,

v.

SELECTIVE INSURANCE
COMPANY OF AMERICA,

     Defendant-Respondent.

_____

> Submitted March 22, 2021 – Decided April 16, 2021
>
> Before Judges Sabatino and Currier.
>
> On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-3757-18.
>
> Louis E. Granata, attorney for appellant.
>
> Kutak Rock, LLP, attorneys for respondent (Michael T. McDonnell, III, and Jane C. Silver, of counsel and on the brief).

PER CURIAM

Ligia Rizescu and Timothy King ("plaintiffs" or the "homeowners") appeal the Law Division's final orders that (1) dismissed their claims against defendant Selective Insurance Company of America ("Selective"), and (2) granted summary judgment declaring that Selective has no obligation to pay to plaintiffs any sums on a settlement they negotiated with Selective's policyholder without the insurer's knowledge and approval.

Plaintiffs contend that, in ruling in favor of Selective, the trial court misapplied various legal principles, including, among other things, res judicata and the entire controversy doctrine.

We reject plaintiffs' arguments and affirm. We do so substantially for the sound reasons expressed in the successive written opinions of Judge Linda Grasso Jones dated October 22, 2019 and April 13, 2020.

I.

In essence, this matter stems from plaintiffs entering into a $400,000 litigation settlement with a company that had virtually no assets, while failing to assure that the company's liability insurer, Selective, participated in and approved of that settlement before it was consummated.

The First Lawsuit

The underlying first lawsuit in the Law Division, Docket No. MON-L-1629-16, started as essentially a collections case filed by Schaefer Remodeling,

LLC ("Schaefer"), against its customers, Rizescu and King. Schaefer sought payment from the homeowners for unpaid sums on a remodeling contract that was partially completed before they terminated Schaefer from the job.

Through their attorney, Rizescu and King filed a counterclaim against Schaefer in the first lawsuit. Their counterclaim asserted five counts alleging: (1) violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -20, (2) breach of contract, (3) negligence, (4) unjust enrichment, and (5) breach of the implied covenant of good faith and fair dealing.

Schaefer sought a defense and indemnification on the counterclaim from its liability insurance carrier, Selective. Selective denied a duty to defend and indemnify Schaefer on the counterclaim except for the third count, the negligence claim, which it conditionally agreed to defend under a reservation of rights.

Selective retained the law firm of Zirulnik, Sherlock & DeMille to defend Schaefer against the homeowners' negligence claim. Schaefer continued to be represented by its counsel, Glen A. Vida, Esq., on all the other claims in the underlying litigation.

The case went to non-binding, court-annexed arbitration in October 2017. The arbitrator recommended an award of $74,196 to the homeowners on their counterclaim, corresponding to a refund of what they had paid Schaefer. The

arbitrator found "no proof" of the negligence claim. Schaefer filed a de novo demand for a jury trial, thereby nullifying the arbitration award.

As the result of a settlement conference in February 2018, Schaefer agreed to release Selective from any further defense and indemnity obligation under the insurance policy, in exchange for a $10,000 payment to Schaefer. The homeowners were not a party to that settlement, although their counsel learned about it before entering into the $400,000 settlement with Schaefer. The release was signed on February 9, 2018.

Following the release, on March 2, 2018, Vida (Schaefer's personal attorney) and Zirulnik filed a substitution of counsel with the trial court, pursuant to Rule 1:11-2(a)(2), replacing the Zirulnik firm on count three with Vida.

On the scheduled trial date in May 2018, after a settlement conference before Judge Dennis O'Brien attended by plaintiffs' attorney and Schaefer's personal counsel Vida, a settlement was reached. Specifically, Schaefer agreed to dismiss its claims against Rizescu and King and confessed judgment in the amount of $400,000 on their counterclaim. The settlement did not contain an admission of liability. It did not specify an allocation of the $400,000 among the five counts of the homeowners' counterclaim.

A-3794-19

Notably, the $400,000 figure is an amount well above the arbitration award. The large sum was agreed to despite the fact that, according to Vida, Schaefer, a limited liability company, had few or no assets.[1]

There is no dispute that the $400,000 settlement was entered into without Selective's knowledge or consent. The defense counsel assigned by Selective did not attend the settlement conference. Nor did that counsel or any Selective representative sign the settlement documents.

Three days after the judgment was entered on the settlement, plaintiffs' attorney contacted Selective, demanding payment of the $400,000 settlement amount. Selective declined to do so.

Meanwhile, on July 11, 2018, Schaefer filed a petition for bankruptcy. Apparently plaintiffs have not obtained any payments through the bankruptcy proceedings, and we presume the $400,000 judgment against Schaefer remains unsatisfied.

---

[1] The briefs suggest the $400,000 figure roughly might reflect a trebling of plaintiffs' claimed actual damages, plus attorneys fees recoverable under the consumer fraud statute.

A-3794-19

The Second Lawsuit

Thereafter, Rizescu and King filed the present lawsuit, Docket No. MON-L-3757-18, seeking payment from Selective of the $400,000 settlement amount.[2] Selective filed a counterclaim seeking to have the court declare it has no responsibility for the settlement attained without its involvement.

Before discovery ended, plaintiffs moved for summary judgment in their favor, which Judge Grasso Jones denied in an initial October 22, 2019 written opinion. In that four-page opinion, the court rejected plaintiffs' argument that Selective's counterclaim seeking a declaration of its non-liability was barred by the entire controversy doctrine. Several months later, Selective moved for summary judgment, which the court granted with a more detailed fourteen-page written opinion dated April 13, 2020.

The Appeal

This appeal ensued. Plaintiffs maintain the trial court erred in its analysis and application of the principles of entire controversy and res judicata. They

---

[2] Rizescu and King have filed a separate lawsuit in the Law Division, Docket No. MON-L-4295-18, against Schaefer and various related entities, alleging civil racketeering ("RICO") violations in light of Schaefer's bankruptcy filing. The trial court reportedly denied a motion to consolidate the RICO lawsuit with the present case. We make no comment about the merits or viability of that civil action.

seek reversal of the trial court's decisions, with a determination by this court that the $400,000 settlement was covered under the liability policy and must be paid by Selective.

## II.

In evaluating this appeal, we are guided by time-honored principles. We review the trial court's summary judgment rulings de novo, applying the familiar legal standards that govern such motions. Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 349-50 (2016).

Our courts on summary judgment must consider the factual record, and reasonable inferences that can be drawn from those facts, "in the light most favorable to the non-moving party" to decide whether the moving party was entitled to judgment as a matter of law. IE Test, LLC v. Carroll, 226 N.J. 166, 184 (2016) (citing Brill v. Guardian Life Ins. Co., 142 N.J. 520, 540 (1995)); R. 4:46-2(c).

Apart from these procedural aspects of summary judgment motions, we are also guided by well-settled legal principles of New Jersey's entire controversy doctrine and the concept of res judicata. Before plunging into a discussion of those principles, we first make some important predicate observations concerning insurance law and the terms of Selective's insurance policy in this case.

A-3794-19

<u>Applicable Statutes and the Clear Terms of Selective's Policy</u>

As a New Jersey home contractor, Schaefer was required by applicable statutes and regulations to maintain liability insurance coverage.  <u>See</u> N.J.S.A. 56:8-136 to -152; N.J.A.C. 13:45A-17.1 to -17.14.  Here, Schaefer obtained such a policy from Selective, with a coverage limit of $1 million.

The policy Selective issued to Schaefer states in pertinent part:

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.[3]

---

[3]  This language comports with the requirements set forth in N.J.S.A. 17:28-2, which states in relevant part:

> <u>No policy of insurance against loss or damage</u> resulting from accident to or injury suffered by an employee or other person and for which the person insured is liable . . . <u>shall be issued</u> or delivered in this state <u>by any insurer authorized to do business in this state, unless there is contained within the policy a provision that the insolvency or bankruptcy of the person insured shall not release the insurance carrier from the payment of damages for injury sustained or loss occasioned during the life of the policy</u>, and stating that <u>in case execution against the insured is returned unsatisfied</u> in an action brought by the injured person, or his personal representative in case death results from the accident, because of the insolvency or bankruptcy, <u>then an action may be maintained by the injured person</u>, or his personal representative, <u>against the corporation under</u>

**2. Duties In the Event Of Occurrence, Offense, Claim Or Suit**

. . . .

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this [Commercial General Liability] Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured;
or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of

the terms of the policy for the amount of the judgment in the action not exceeding the amount of the policy.

[(Emphasis added).]

9

A-3794-19

> liability signed by us, the insured and the claimant or the claimant's legal representative.

[(Emphasis added).]

By these plain terms, the policy requires "an agreed settlement" signed by Selective or a "final judgment" for Selective to pay damages incurred by a third party due to Schaefer's actions.

Additionally, although the bankruptcy of an insured—in this case Schaefer—does not itself relieve Selective of an obligation to pay, such an obligation does not arise "for damages that are not payable" under the policy. Nor is Selective obligated to pay damages agreed to voluntarily by the insured without Selective's consent. As the trial court correctly recognized, the latter situation exists here.

Selective did not consent to the $400,000 settlement. Indeed, its counsel was not even present at the conference with Judge O'Brien that produced the $400,000 settlement and the associated judgment.

We incorporate by reference and adopt Judge Grasso Jones's findings with respect to these critical points:

> [T]he settlement between Schaefer and Rizescu and King constituted a voluntary payment assumed by Schaefer alone and without the consent or agreement of Selective. Selective was not a party to the underlying lawsuit and was not a party to the agreement entered into between Schaefer and Rizescu and King. At the

10

time of the entry of the May 2018 settlement, Schaefer was represented by its own personally-retained counsel, . . . Vida . . . .

In a footnote, the judge properly rejected plaintiffs' contention that Selective was "in a sense" a party to the underlying lawsuit because an attorney had been assigned by Selective to represent Schaefer on the homeowners' third count of negligence. As the judge recognized, an attorney's dual representation of the competing interests of both Schaefer and the insurance company on coverage issues would have been unethical:

> As a matter of law . . . counsel—who was no longer involved in the case at the time of the settlement between Schaefer and Rizescu and King—represented Schaefer, not Selective, and any view otherwise would clearly bestow upon that attorney a clear conflict of interest. The attorney assigned by the insurance carrier to provide a defense to the insured does not and cannot represent the interests of the insurance carrier.

See also N.J. RPC 1.7 (ethics rule disallowing concurrent conflicts of interests); Bartels v. Romano, 171 N.J. Super. 23, 29 (App. Div. 1979) (underscoring the "unswerving allegiance" that an attorney who has been assigned to represent an insured owes to that client, thereby prohibiting the attorney from also representing the separate interests of the insurer).

In sum, when plaintiffs negotiated the $400,000 settlement with Schaefer, Selective was not in the case and was not being represented by counsel. The

11

clear terms of the insurance policy required Selective's approval of any settlement in order for its coverage to extend to the settlement amount. Lacking such approval, Schaefer and plaintiffs acted on their own. And, as described by Vida during his deposition, they agreed to have "an empty judgment" entered against an LLC that had only "limited assets." Quite simply, the insurer cannot be stuck after-the-fact with that deal.

The procedural concepts of entire controversy and res judicata do not undermine this clear outcome. We address them, in turn.

Entire Controversy

The entire controversy doctrine, as codified in Rule 4:30A,[4] generally requires the parties to an action to raise all transactionally related claims in that action. It is an equitable preclusion doctrine that "seeks to assure that all aspects of a legal dispute occur in a single lawsuit." Olds v. Donnelly, 150 N.J. 424, 431 (1997).

---

[4] Rule 4:30A, entitled "Entire Controversy Doctrine," states, in relevant part:

> Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by R. 4:64-5 (foreclosure actions) and R. 4:67-4(a) (leave required for counterclaims or cross-claims in summary actions).

As our Supreme Court recently explained, "[t]he entire controversy doctrine 'seeks to impel litigants to consolidate their claims arising from a single controversy whenever possible.'" Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 98 (2019) (quoting Thornton v. Potamkin Chevrolet, 94 N.J. 1, 5 (1983)). The doctrine generally disfavors successive suits regarding the same controversy. See DiTrolio v. Antiles, 142 N.J. 253, 267 (1995).

Even so, "the boundaries of the entire controversy doctrine are not limitless. It remains an equitable doctrine whose application is left to judicial discretion based on the factual circumstances of individual cases." Highland Lakes Country Club & Cmty. Ass'n v. Nicastro, 201 N.J. 123, 125 (2009) (quoting Oliver v. Ambrose, 152 N.J. 383, 395 (1998)). As such, "the polestar for the application" of the doctrine is "judicial fairness," Dimitrakopoulos, 237 N.J. at 114 (quoting K-Land Corp. No. 28 v. Landis Sewerage Auth., 173 N.J. 59, 74 (2002)), and "a court must apply the doctrine in accordance with equitable principles, with careful attention to the facts of a given case." Ibid.

The doctrine should not be applied "where to do so would be unfair in the totality of the circumstances and would not promote any of its objectives, namely, the promotion of conclusive determinations, party fairness, and judicial economy and efficiency." Ibid. (quoting K-Land, 173 N.J. at 70). When

13

analyzing fairness, "courts should consider fairness to the court system as a whole, as well as to all parties." Id. at 115 (quoting Wadeer v. N.J. Mfrs. Ins. Co., 220 N.J. 591, 605 (2015)).

Significantly here, Rule 4:30A specifies that the entire controversy doctrine generally applies to the non-joinder of claims, not the non-joinder of parties. Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 4:30A at 1370 (2020) ("There is no mandatory party joinder requirement under the entire controversy doctrine. Except in special situations involving both inexcusable conduct and substantial prejudice to the non-party resulting from omission from the first suit, successive actions against a person not a party to the first action are not precluded.").

Judge Grasso Jones rightly declined to use the entire controversy doctrine as a bar to Selective's counterclaim in the second lawsuit and its arguments against coverage. As we have already noted, Selective was never a party to the first lawsuit. Its role was limited to assigning a lawyer to serve as Schaefer's defense counsel on a single count of the homeowners' multiple claims. The consumer fraud claims, which carried with them treble damages and fee-shifting exposure, were outside the scope of the assigned attorney's representation.

The coverage "controversy" was not litigated in the first lawsuit, nor could it have been without Selective being a party. It would be manifestly unfair to

14

apply the doctrine in such a manner to deprive Selective of its day in court. Dimitrakopoulos, 237 N.J. at 114 (emphasizing the importance of assuring fairness in this context).

We cannot say it any better than the trial court:

> In this action, Selective was not a party to the underlying litigation between Rizescu and King and Schaefer. See Oltremare v. ESR Custom Rugs, Inc., 330 N.J. Super. 310, 314-15 (App. Div. 2000) ([]The entire controversy doctrine requires the joinder of "virtually all causes, claims, and defenses relating to a controversy between the parties engaged in the litigation."). Under the reservation of rights in the prior action, Selective provided Schaefer with counsel to represent and defend Schaefer, and that attorney represented Schaefer, not Selective, on count three of the counterclaim alleging negligence. The issue of coverage liability was not litigated in the prior action. As a matter of law, the defendant in the prior action, Schaefer, did not stand in the shoes of Selective. Selective's knowledge that the prior action was ongoing does not provide a basis for concluding that Selective's counterclaim against plaintiffs is barred under the entire controversy doctrine.
>
> [(Emphasis added)].

Res Judicata

Similar reasoning demonstrates why plaintiffs' invocation of res judicata is unavailing.

The doctrine of res judicata, or claim preclusion, bars the relitigation of claims that were, or which could have been, asserted by the same party against

15

another party in the original action. See generally Brunetti v. Borough of New Milford, 68 N.J. 576, 587-88 (1975); Innes v. Carrasoca, 391 N.J. Super. 453, 488-89 (App. Div. 2007).

Res judicata requires the following elements: common parties, common subject matters, common issues and common evidence, as well as a final judgment rendered in the first action on the merits. See Velasquez v. Franz, 123 N.J. 498, 505-06 (1991); see also Restatement of Judgments (Second) § 19 (1982). Even if a claim is not specifically raised in the first proceeding, it is precluded from being litigated in the ensuing action if there previously was a fair opportunity to have raised it. See McNeil v. Legis. Apportionment Comm'n, 177 N.J. 364, 395 (2003); see also Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 338 (1996).

The circumstances here are missing several of these essential ingredients. Most glaringly, as we have already stressed, Selective was not a party to the first lawsuit. Hence, there is not a common identity of parties when compared with the second action brought by the homeowners against Selective. In addition, the issue of the extent of Selective's coverage, which the insurer confined to the negligence count, was never actually litigated in the first case. Nor was there an adjudication of any issues concerning Selective in the first case. Indeed, the

 A-3794-19

settlement wasn't even allocated to the negligence count, but left generic and vague.

For these many reasons, the trial judge was plainly correct in rejecting plaintiffs' reliance on res judicata. Selective's declaratory claims were not precluded whatsoever by the disposition of the first lawsuit.

Conclusion

We have considered all other points raised by appellants, and they lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3794-19