**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3788-21

STATE OF NEW JERSEY,
ex rel., JOSHUA M. HARMAN,

     Plaintiff-Appellant,

v.

TRINITY INDUSTRIES, INC.
and TRINITY HIGHWAY
PRODUCTS, LLC,

     Defendants-Respondents.

_____

Argued November 15, 2023 – Decided December 27, 2024

Before Judges Accurso, Vernoia and Gummer.

On appeal from the Superior Court of New Jersey,
Law Division, Mercer County, Docket No. L-1344-14.

Justin Strother (Diamond McCarthy, LLP) of the
Texas bar, admitted pro hac vice, argued the cause for
appellant (Stone & Magnanini, LLP, Justin Strother,
Allan Diamond (Diamond McCarthy, LLP) of the
Texas and New York bar, admitted pro hac vice, and
Melissa Marrero (Diamond McCarthy, LLP) of the
Texas bar, admitted pro hac vice, attorneys; Robert A.

Magnanini, Allan Diamond, Justin Strother, and Melissa Marrero, on the briefs).

Bradley G. Hubbard (Gibson, Dunn & Crutcher, LLP) of the Texas bar, admitted pro hac vice, argued the cause for respondents (Eckert Seamans Cherin & Mellott, LLC, Bradley G. Hubbard, Allyson N. Ho (Gibson, Dunn & Crutcher, LLP) of the Texas bar, admitted pro hac vice, John C. Fitzpatrick (Bartlit Beck LLP) of the Illinois bar, admitted pro hac vice, and Robert S. Salcido (Akin Gump Strauss Hauer & Feld, LLP) of the District of Columbia bar, admitted pro hac vice, attorneys; John C. Fitzpatrick and Robert S. Salcido, of counsel and on the brief; Robert P. Zoller, David P. Skand, Allyson N. Ho, and Bradley G. Hubbard, on the brief).

The opinion of the court was delivered by

ACCURSO, P.J.A.D.

In this long-running qui tam case filed on behalf of the State of New Jersey under the New Jersey False Claims Act, N.J.S.A. 2A:32C-1 to -18, relator Joshua M. Harman appeals from a February 16, 2022 order denying his motion to "amend" his then time-barred complaint in an action previously dismissed without prejudice a year before, as well as the order denying his motion for reconsideration. Because we agree with the trial court that the complaint is indisputably time-barred, we affirm.

The facts providing the background of this matter are set out in the Fifth Circuit's 2017 opinion in the parties' federal False Claims Act suit, United

2

States ex rel. Harman v. Trinity Indus. Inc., 872 F.3d 645 (5th Cir. 2017). Our focus is on the procedural history of that case and this one.

Defendant Trinity Highway Products, LLC, a subsidiary of Trinity Industries, Inc., manufactures a guardrail "end terminal" system, the ET-Plus, under license from Texas A&M University designed by the engineers at the University's Transportation Institute to slow vehicles colliding with it to survivable speeds and otherwise reduce the risks a collapsing guardrail poses to the driver and any passengers in the vehicle. In addition to a comprehensive rendition of the facts, the Fifth Circuit's opinion contains an appendix with diagrams of the ET-Plus system by Trinity and Harman. Id. at 670-71. Trinity sells ET-Plus systems to highway contractors, who have installed them throughout the country, including in New Jersey.

In January 2000, the Federal Highway Administration accepted the ET-Plus for use on the National Highway System, clearing the way for the federal government to reimburse states installing the ET-Plus system. Id. at 648. At that time, the ET-Plus was designed for use with standard 27.75-inch-high guardrails. The proliferation of SUVs and light trucks on the nation's roads, however, led to the need for taller guardrails. Trinity worked with the engineers at the Transportation Institute to develop a modified ET-Plus system

3

for use with the new 31-inch guardrails. The engineers at the Transportation Institute crash tested the new ET-Plus at the 31-inch height and prepared a report for the Highway Administration, which approved the modified ET-Plus for the 31-inch guardrail height in September 2005. Id. at 648.

In January 2012, Harman, a competitor of Trinity's, went to the Highway Administration with an extensive PowerPoint presentation about changes to the ET-Plus that he believed were not disclosed to the Highway Administration in 2005 and were resulting in accidents around the country. Id. at 649. Harman does not dispute that he advised the Highway Administration at that meeting of Trinity's "change from a five- to four-inch guide channel, the shortening of the guide channel, the change in the exit gap from one-and-a-half inches to one inch, [and] the diminished height of the extruder chamber." Ibid.

The Highway Administration met with Trinity three times the following month to discuss Harman's allegations. Id. at 650. Trinity admitted that a detailed drawing of the 2005 changes it had prepared and sent to the engineers at the Transportation Institute for inclusion in the package to the Highway Authority was inadvertently omitted. It insisted, however, that "the May 2005

4

crash test" conducted by the Transportation Institute "was of an ET-Plus system with a modified terminal head." Ibid.

Harman filed a federal qui tam suit under seal against Trinity in the Eastern District of Texas the following month, March 2012, in which the government declined to intervene. Ibid. On June 17, 2014, shortly before trial in the case, the Highway Administration released an official memorandum stating it had "'validated that the ET-Plus with the 4 inch guide channels was crash tested in May 2005,' that '[t]he Trinity ET-Plus with 4-inch guide channels became eligible for Federal reimbursement . . . on September 2, 2005,' and that there was 'an unbroken chain of eligibility for Federal-aid reimbursement [that] has existed since September 2, 2005, and the ET-Plus continues to be eligible today.'" Ibid.

The first trial ended in a mistrial. Ibid. Before the start of the second trial, Trinity applied to the Fifth Circuit for a writ of mandamus. Although denying the application, the circuit court issued this caution:

> This court is concerned that the trial court, despite numerous timely filings and motions by the defendant, has never issued a reasoned ruling rejecting the defendant's motions for judgment as a matter of law. On its face, [the Highway Administration's] authoritative June 17, 2014 letter seems to compel the conclusion that [the Highway Administration], after due consideration of all the facts, found the

5

defendant's product sufficiently compliant with federal safety standards and therefore fully eligible, in the past, present and future, for federal reimbursement claims. While we are not prepared to make the findings required to compel certification for interlocutory review by mandamus, a course that seems prudent, a strong argument can be made that the defendant's actions were neither material nor were any false claims based on false certifications presented to the government.

[Id. at 650-51.]

A new trial began promptly after the circuit's denial of the writ, and the jury returned a verdict for Harman in October 2014. Id. at 651.

In the wake of the verdict, the Highway Administration "did not withdraw its approval of the ET-Plus units; rather, it sought independent testing of the units and confirmation . . . that the units being tested were the same as those installed across the country." Ibid.

The independent testing ordered by the Highway Administration was undertaken by a joint task force of state, federal, and foreign transportation experts between December 2014, and January 2015. Ibid. The task force "examined over one thousand existing ET-Plus installations across the country between November 2014 and January 2015 and concluded that: (1) '[t]here is no evidence to suggest that there are multiple versions [of the ET-Plus] on our nation's roadways' and (2) the units that were crash tested were 'representative

of the devices installed across the country.'"  Ibid.  The Highway

Administration announced the findings in March 2015, declaring its approval

of the ET-Plus remained in place, and Trinity, which had suspended sales

following the verdict, resumed its marketing of the device.  Ibid.

The district court in Texas subsequently denied Trinity's JNOV motion

and entered judgment for Harman and the United States in the amount of

$663,360,750.  Ibid.  Trinity appealed.  Id. at 651-52.

In the meantime, Harman had sued Trinity in the Superior Court on

behalf of the State of New Jersey on June 14, 2014, just days before the

Highway Administration issued its memorandum stating the ET-Plus with 4-

inch guide channels had been continuously eligible for federal reimbursement

since September 2, 2005.  Harman alleged a false claim for each time the

New Jersey Department of Transportation had reimbursed a contractor for an

ET-Plus system following the 2005 changes Trinity made, which it alleged

rendered the units non-compliant with the federal Highway Administration's

approval and the relevant federal safety standard.

Following the federal jury's verdict, the Department removed the ET-

Plus terminal from its Qualified Product List on October 31, 2014, thus

suspending installment of or reimbursement for the ET-Plus terminal.  It did

7

not, however, mandate replacement of existing units, which remain in use along the State's highways.

The New Jersey complaint remained under seal throughout the federal trial of Harman's claims; Trinity's appeal to the Fifth Circuit, which reversed the judgment for Harman and remanded for entry of judgment for Trinity based on Harman's failure to establish the materiality of any alleged false statement by Trinity under the federal False Claims Act; and the United States Supreme Court's denial of Harman's petition for certiorari, 586 U.S. 1067 (2019). The New Jersey Attorney General thereafter declined to intervene in this action, and the complaint was finally unsealed in April 2019, three months after the Supreme Court had declined to hear Harman's federal appeal.

Harman served Trinity in September 2019 and filed an amended complaint in October, alleging that Trinity had falsely certified to the federal Highway Authority that the ET-Plus "was identical in design to the original approved design." Trinity moved to dismiss the complaint. On June 1, 2020, the trial judge granted the motion to dismiss without prejudice, citing Harman's failure to "adequately plead that Trinity [had] made a false claim . . . an essential element of [the New Jersey False Claims Act]" or adhere to Rule 4:5-8, which requires parties to plead fraud with specificity.

A-3788-21

Harman's counsel did not cross-move to amend Harman's complaint to cure the deficiencies, nor file a new action. Instead, Harman let the statute of limitations expire on his claims on October 31, 2020, six years after the Department suspended reimbursement for the ET-Plus. See N.J.S.A. 2A:32C-11(a). Seven months later, on June 1, 2021, Harman filed a motion under Rule 4:50-1 to "reopen" the action previously dismissed without prejudice and for leave to file a second amended complaint based on a 2005 exchange of email between two Trinity executives about the "five failed flared crash tests" Harman had made "a centerpiece" of its federal trial, but which the Fifth Circuit found "were actually of a distinct, experimental system — not the type of ET-Plus system on American roadways" and thus irrelevant to the federal Highway Administration's 2005 approval of the ET-Plus.

Judge Massi denied the motion, rejecting Harman's argument that he didn't have access to the emails until 2021, as there was no dispute that Harman's attorney had used the so-called "smoking gun" email chain "in other cases since 2018." The judge also found amendment would be futile because both the State and federal government had concluded Trinity had not defrauded them about the ET-Plus system, and it remained in use on the State's highways. Finally, Judge Massi found Trinity would be prejudiced as the

9

statute of limitations had expired on Harman's claims and there was no equitable basis for relief.

Harman moved for reconsideration pursuant to Rule 4:49-2. Judge Massi denied the motion with prejudice, again deeming the amendment futile and rejecting Harman's new argument that the email chain had been unavailable to him on account of a protective order entered in another matter. The judge found Harman had failed to explain why he "never mentioned the protective orders in his motion to amend" or why he waited seven months after admittedly reading the email chain to attempt to reopen the action.

Harman appeals, contending the trial court erred in failing to find his amended complaint would "relate back" to his timely filed 2014 action under Rule 4:9-3 and that refusing to equitably toll the statute of limitations was inequitable because: Trinity withheld evidence of the emails; it would effectively transform the earlier dismissal without prejudice into a dismissal with prejudice, contrary to the express language of that order; the proceedings were effectively stayed while the State conducted its investigation and determined not to intervene; and Trinity would suffer no prejudice "considering the parties have been engaged in active litigation from 2011 to present." We disagree on all points.

A-3788-21

Rule 4:9-3 has no applicability here. Harman's 2014 false claims action was dismissed without prejudice on June 1, 2020, four months prior to the October 31, 2020 expiration of the statute of limitations on his claims. As Harman failed to file a cross-motion to amend his complaint in response to Trinity's successful Rule 4:6-2 motion, he was left with the option of filing a new action before the statute of limitations expired. He failed to do so. By the time Harman sought to file his second amended complaint on June 1, 2021, "nothing remained to which the [proposed amended complaint] could relate back." Molnar v. Hedden, 138 N.J. 96, 104 (1994).

There is also no question but that Harman "had to be aware of the statute of limitations problem. It is elementary that a dismissal without prejudice adjudicates nothing and does not constitute a bar to re-institution of the action, subject to the constraint imposed by the statute of limitations." O'Loughlin v. Nat'l Cmty. Bank, 338 N.J. Super. 592, 603 (App. Div. 2001). That constraint is dispositive here.

The law is well settled that "the principal consideration behind statutes of limitations is fairness to the defendant." Id. at 102. The five failed crash tests to which the "smoking gun" emails refer were "a centerpiece" of the federal suit tried in 2014. Not only has the Fifth Circuit determined those

crash tests are irrelevant to Harman's claims against Trinity, it is undisputed that Harman's counsel made use of the email chain, referring to them in other suits since 2018.  See Oltremare v. ESR Custom Rugs, Inc., 330 N.J. Super. 310, 319 (App. Div. 2000) ("[k]nowledge possessed by an attorney relative to the prosecution of a cause of action is generally imputed to the client").  "The imputation of an attorney's knowledge to a client is even more appropriate when dealing with facts that are associated with the type of advice traditionally given by an attorney, such as how and when to . . . file a lawsuit."  Ibid.

In addition, Harman admits he'd read the emails himself by November 2020, seven months before he filed his application to amend his previously dismissed complaint.  There was simply no basis for the trial court to have refused to apply the statute of limitations here, and doing so would have deprived Trinity of its "vested right to be forever free" of Harman's claim in this action.  McGlone v. Corbi, 59 N.J. 86, 94 (1971).  See also Czepas v. Schenk, 362 N.J. Super. 216, 225 (App. Div. 2003) (refusing to allow a plaintiff to proceed in a manner "tantamount to allowing a plaintiff to indefinitely extend a statute of limitations until he or she could construct a cause of action against a defendant, rendering the statutory limitation period meaningless").

A-3788-21

We also agree with Judge Massi that Harman made no effort in his proposed amended complaint to cure his failure to plead his fraud claims with specificity, see Universal Health Servs., Inc. v. U.S. ex rel. Escobar, 579 U.S. 176, 187 (2016) (interpreting federal false claims act to incorporate common law meaning of fraud), or meet the demanding materiality standard that led to the dismissal of his complaint in the first place, making reinstatement futile. See C.V. by & through C.V. v. Waterford Twp. Bd. of Educ., 255 N.J. 289, 306 (2023). In short, Harman has simply provided us no basis to conclude Judge Massi abused his discretion in denying Harman's application to re-instate his time-barred action.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13

A-3788-21